**14-1060, 14-1091**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

MOBILEMEDIA IDEAS LLC,

Plaintiff-Cross Appellant,

v.

APPLE INC.,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE IN CASE NO. 10-CV-0258, JUDGE SUSAN ROBINSON

---

# CORRECTED RESPONSE AND REPLY BRIEF OF DEFENDANT-APPELLANT APPLE INC.

---

GEORGE A. RILEY
LUANN L. SIMMONS
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8700

## TABLE OF ABBREVIATIONS

"'068 Patent" refers to U.S. Patent No. 6,070,068. A32727-48.

"'075 Patent" refers to U.S. Patent No. 6,253,075. A43457-69.

"'078 Patent" refers to U.S. Patent No. 6,427,078. A21062-75.

"'231 Patent" refers to U.S. Reissued Patent No. RE 39,231. A57690-706.

"Apple" refers to Defendant-Appellant Apple Inc.

"Bayless" refers to the prior art reference to the '068 Patent, U.S. Patent No. 5,754,636. A57007-114.

"GSM" refers to the Global System for Mobile Communications standard. A24226.

"GSM 04.08" refers to European Telecommunication Standard - ETS 300 557: European Digital Cellular Telecommunications System (Phase 2), Mobile Radio Interface Layer 3 Specification. A57169-574.

"GSM 04.83" refers to European Telecommunication Standard - ETS 300 567: European Digital Cellular Telecommunications System (Phase 2), Call Waiting (CW) and Call Hold (HOLD) Supplementary Services - Stage 3. A57575-94.

"GSM 24.008" refers to GSM Specification: ETSI TS 124 008 V6.12.0 (2006-03) Technical Specification; Digital cellular telecommunications system (Phase 2+); Universal Mobile Telecommunications System (UMTS); Mobile radio interface Layer 3 specification; Core network protocols; Stage 3 (3GPP TS 24.008 version 6.12.0 Release 6). A56260-785.

"GSM 24.083" refers to Digital Cellular Telecommunications System (Phase 2+) Universal Mobile Telecommunications System (UMTS) Call Waiting (CW) and Call Hold (HOLD) Supplementary Service Stage 3 (3GPP TS 24.083 version 6.0.0 Release 6). A56242-59.

"JMOL" refers to "judgment as a matter of law."

"Kyocera" refers to the prior art reference to the '078 Patent, Japanese Patent Application Publication No. H6-133081. A57595-612.

"Lucent" refers to the prior art reference to the '078 Patent, U.S. Patent No. 5,550,646. A57613-21.

"MobileMedia" refers to Plaintiff-Cross Appellant MobileMedia Ideas LLC.

"Opening" refers to Apple's February 3, 2014 Brief of Defendant-Appellant Apple Inc. Doc. No. 25-1.

"Opp." refers to MobileMedia's March 20, 2014 Brief of Plaintiff-Appellee, Cross-Appellant. Doc. No. 29-1.

"PTO" refers to the United States Patent and Trademark Office.

## CERTIFICATE OF INTEREST

Counsel for Apple certifies the following:

1. We represent Apple.

2. Apple is the real party in interest.

3. No publicly owned company directly owns more than ten percent of Apple.

4. Appearing on behalf of Apple in the district court action were George A. Riley, Luann L. Simmons, David S. Almeling, Vision Winter, Melody N. Drummond Hansen, Xin-Yi Zhou, Michael Sapoznikow, Marc M. Breverman, and Jonathan Crawford of O'Melveny & Myers LLP; Richard K. Hermann and Mary Matterer of Morris James LLP; Tara D. Elliott, Ruffin B. Cordell, Frank E. Scherkenbach, John M. Farrell, and Lauren A. Degnan of Fish & Richardson, P.C.; and Eric S. Namrow and Jon Y. Chow, formerly of O'Melveny & Myers LLP. Appearing on behalf of Apple in this appeal are Mr. Riley, Ms. Simmons, Ms. Drummond Hansen, Mr. Zhou, Mr. Breverman, and Timothy D. Byron of O'Melveny & Myers LLP.

Date: May 13, 2014

Respectfully submitted,

By: /s/ *Luann L. Simmons*
Luann L. Simmons

## TABLE OF CONTENTS

Page

TABLE OF ABBREVIATIONS ........ i

CERTIFICATE OF INTEREST ........ iv

TABLE OF CONTENTS ........ v

TABLE OF AUTHORITIES ........ ix

APPLE'S REPLY IN SUPPORT OF APPEAL REGARDING '078 AND '068 PATENTS ........ 1

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. '078 Patent, Claim 73 ........ 2

A. The Infringement Judgment Must Be Reversed Because The District Court's Constructions Are Incorrect ........ 2

1. The District Court Incorrectly Construed "Means … For Transmitting" ........ 3

2. The District Court Incorrectly Construed "Means For Processing And For Storing" ........ 8

B. The District Court Erred In Denying JMOL Of Invalidity Of Claim 73 ........ 12

1. MobileMedia Mischaracterizes The Record ........ 12

2. There Was No Factual Dispute At Trial That The Kyocera-Lucent Combination Discloses All Elements Of Claim 73 ........ 15

3. Combining Kyocera With Lucent Would Have Been Obvious To A Person Of Ordinary Skill ........ 20

## TABLE OF CONTENTS
## (continued)

**Page**

II. ’068 Patent, Claim 23 .......... 25

A. The Infringement Judgment Must Be Reversed Because The District Court’s Construction Of “Listing Said Processing Items” Is Incorrect .......... 25

1. The District Court Erroneously Construed “Listing Said Processing Items” Broader Than The Disclosed “List” Format .......... 25

2. The Infringement Verdict Cannot Be Maintained Under A Proper Construction Of “Listing Said Processing Items” .......... 28

B. The District Court Erred In Denying JMOL Of Invalidity .......... 31

CONCLUSION .......... 36

APPLE’S RESPONSE TO MOBILEMEDIA’S CROSS APPEAL REGARDING ’075 AND ’231 PATENTS .......... 37

INTRODUCTION .......... 37

COUNTER-STATEMENT OF THE ISSUES .......... 39

I. ’075 Patent, Claims 5, 6, and 10 .......... 39

II. ’231 Patent, Claims 2, 3, 4, and 12 .......... 39

STATEMENT OF THE CASE .......... 40

I. ’075 Patent .......... 40

A. Alleged Invention And Asserted Claims 5, 6, and 10 .......... 40

B. Claim Constructions .......... 40

**TABLE OF CONTENTS**
**(continued)**

**Page**

C. Accused Products And The Non-Infringement Judgment ........ 41

D. Prior Art And JMOL Of Invalidity ........ 45

II. ’231 Patent ........ 49

A. Alleged Invention And Asserted Claims 2-4 and 12 ........ 49

B. Accused Products ........ 52

C. Claim Construction And Summary Judgment ........ 52

SUMMARY OF ARGUMENT ........ 53

STANDARD OF REVIEW ........ 55

ARGUMENT ........ 56

I. ’075 Patent ........ 56

A. The Non-Infringement Judgment Should Be Affirmed Because The Accused DISCONNECT Message Does Not “Indicate” That The Wireless System Must Immediately Release A Call ........ 56

B. The Invalidity Judgment Should Be Affirmed Because The Asserted Claims Are Obvious ........ 59

1. The District Court Properly Found Claims 5, 6, And 10 Obvious As A Matter Of Law ........ 59

2. A POSITA Would Not Be “Discouraged” From Combining GSM 04.08 And GSM 04.83 When Considering Both References Together ........ 61

3. MobileMedia’s Invalidity Argument Is Directly Contradicted By Its Infringement Argument ........ 66

## TABLE OF CONTENTS
## (continued)

**Page**


C. Alternatively, The Invalidity Judgment Should Be Affirmed Because Claims 5, 6, And 10 Are Anticipated..... 67

II. '231 Patent ..... 69

A. The District Court Correctly Construed "To Change A Volume" ..... 69

1. The District Court's Construction Is Consistent With Customary And Ordinary Meaning And Is Supported By The Intrinsic And Extrinsic Evidence ..... 70

2. The District Court's Construction Is Proper In Light Of The Dependent Claim Limitations ..... 73

B. The Non-Infringement Judgment Should Be Affirmed Because The Accused Products Do Not "Change A Volume Of The Alert Sound" ..... 77

CONCLUSION ..... 79

CERTIFICATE OF COMPLIANCE ..... 80

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) .................................... 56, 68, 69

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997) .................................... 8

*Bailey v. Dart Container Corp. of Mich.*,
292 F.3d 1360 (Fed. Cir. 2002) .................................... 55

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009) .................................... 31

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008) .................................... 71

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005) .................................... 3

*Ex Parte Greve*,
2011 WL 1399059 (Bd. Pat. Interf. Apr. 22, 2011) .................................... 65

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) .................................... 32

*Faroudja Labs., Inc. v. Dwin Elecs., Inc.*,
76 F. Supp. 2d 999 (N.D. Cal. 1999) .................................... 6

*Fonar Corp. v. Gen. Elec. Co.*,
107 F.3d 1543 (Fed. Cir. 1997) .................................... 6

*Function Media, L.L.C. v. Google Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .................................... 15, 33

*Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010) .................................... 23, 35

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Glaxo Grp. v. TorPharm, Inc.*,
153 F.3d 1366 (Fed. Cir. 1998) .......... 55

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004) .......... 7

*Gonzalez v. Sec'y of Dep't of Homeland Sec.*,
678 F.3d 254 (3d Cir. 2012) .......... 55

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) .......... 33

*Hoffmann-La Rouche Inc. v. Apotex Inc.*,
No. 2013-1128, 2014 WL 1394948 (Fed. Cir. Apr. 11, 2014) .......... 67

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
496 F. App'x 57 (Fed. Cir. 2012) .......... 4

*Impax Labs., Inc. v. Aventis Pharm. Inc.*,
545 F.3d 1312 (Fed. Cir. 2008) .......... 21

*In re Freeman*,
30 F.3d 1459 (Fed. Cir. 1994) .......... 7

*In re Fulton*,
391 F.3d 1195 (Fed. Cir. 2004) .......... 65

*In re GPAC Inc.*,
57 F.3d 1573 (Fed. Cir. 1995) .......... 62

*In re Katz Interactive Call Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 2011) .......... 65

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
496 F.3d 1334 (Fed. Cir. 2007) .......... 67

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 2, 24, 33, 66

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008) .......... 68

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
324 F.3d 1308 (Fed. Cir. 2003) .......... 11

*Multiform Desiccants, Inc. v. Medzam Ltd.*,
133 F.3d 1473 (Fed. Cir. 1998) .......... 77

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
7 F.3d 1571 (Fed. Cir. 1993) .......... 76

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998) .......... 19

*Para-Ordnance Mfg. v. SGS Importers Int'l*,
73 F.3d 1085 (Fed. Cir. 1995) .......... 62

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) .......... 27

*PharmaStem Therapeutics Inc. v. ViaCell, Inc.*,
491 F.3d 1342 (Fed. Cir. 2007) .......... 24

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 70

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012) .......... 27

*Saffran v. Johnson & Johnson*,
712 F.3d 549 (Fed. Cir. 2013) .......... 5, 6

*Soverain Software LLC v. Newegg Inc.*,
705 F.3d 1333 (Fed. Cir. 2013), *rev'd in part, vacated in part on other grounds, cert. denied,* 2014 WL 102440 (U.S. Jan. 13, 2014) (No. 13-477) .......... 20, 31

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Sw. Bell Tel. Co. v. Arthur A. Collins, Inc.*,
279 F. App'x 989 (Fed. Cir. 2008) ........ 7

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ........ 56

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ........ 27, 71

*Union Carbide Corp. v. Am. Can Co.*,
724 F.2d 1567 (Fed. Cir. 1984) ........ 21, 62

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
392 F.3d 1325 (Fed. Cir. 2004) ........ 7

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) ........ 24, 56, 67

*Zircon Corp. v. Stanley Black & Decker, Inc.*,
452 F. App'x 966 (Fed. Cir. 2011) ........ 75, 76

**STATUTES**

35 U.S.C. § 102(a) ........ 24

35 U.S.C. § 112(d) ........ 74

35 U.S.C. § 305 ........ 7

**OTHER AUTHORITIES**

*American Heritage Dictionary of the English Language*
(4th ed. 2000) ........ 71

Merriam-Webster.com ........ 71

*Webster's Third New Int'l Dictionary* ........ 71

## TABLE OF AUTHORITIES
## (continued)

**Page**

**RULES**

Fed. R. Civ. P. 56(c) .......................................................................... 56

# APPLE'S REPLY IN SUPPORT OF APPEAL REGARDING '078 AND '068 PATENTS

## INTRODUCTION

MobileMedia fails in its defense of the district court's claim constructions of the '078 Patent's "means … for transmitting" and "means for processing and for storing" terms and the '068 Patent's "listing said processing items" term. For the '078 Patent's means-plus-function terms, MobileMedia violates established rules of claim construction by attempting to expand the scope of these terms beyond the specific structures disclosed in the specification and tied to the claimed functions. For the '068 Patent, MobileMedia argues for a construction of "list" that is inconsistent with its plain meaning and unsupported by the specification. Under the proper claim constructions, the accused iPhones cannot infringe either claim 73 of the '078 Patent or claim 23 of the '068 Patent. This Court should reverse the infringement judgment and enter judgment of non-infringement of these claims.

MobileMedia also fails to show there were any factual disputes at trial regarding Apple's obviousness challenges to claim 73 of the '078 Patent and claim 23 of the '068 Patent. MobileMedia's conclusory

expert testimony and mischaracterizations of the record cannot overcome Apple's compelling evidence of obviousness. The question of obviousness for these two claims hinges on whether a person of ordinary skill in the art would have found it obvious to (1) integrate a microprocessor into a camera phone, in light of prior art that teaches such a combination (claim 73 of the '078 Patent), or (2) program a single key for performing a computer operation in place of two keys, in light of undisputed evidence that programmable keys were well-known (claim 23 of the '068 Patent). Because these trivial modifications of the prior art are merely "the predictable use of prior art elements according to their established functions," the claims are obvious as a matter of law. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417, 421 (2007). Accordingly, this Court should reverse the denial of JMOL of invalidity for both patents and enter judgment of invalidity.

## ARGUMENT

### I. '078 Patent, Claim 73

#### A. The Infringement Judgment Must Be Reversed Because The District Court's Constructions Are Incorrect

Apple's opening brief demonstrates that the district court erred in construing "means … for transmitting" by omitting a modem from the

corresponding structure, and erred in construing "means for processing and for storing" by not limiting the corresponding structure to circuits dedicated to the camera unit. Opening 44-60. MobileMedia does not dispute that the accused iPhones lack a modem and a camera-specific memory unit. Thus, this Court should reverse the infringement judgment for the '078 Patent if it finds error in the construction of either means-plus-function claim term.

### 1. The District Court Incorrectly Construed "Means … For Transmitting"

The proper construction of "means … for transmitting" must include a telefax modem because it is a necessary part of the only structure linked to the claimed function.

The proper construction of a means-plus-function term "must include ***all structure*** that actually performs the recited function," not just a portion of that structure. *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (emphasis added). The '078 Patent discloses using a modem interfaced with a mobile phone unit to transmit camera-captured pictures. A21068 (5:59-62, 6:3-6). In *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, this Court construed "means for connecting" to include two disclosed

components—a "crank arm" and "another attachment"—that perform the connecting function "in tandem." 496 F. App'x 57, 62 (Fed. Cir. 2012). Similarly, because the '078 Patent describes using a modem and a mobile phone unit together to transmit camera-captured pictures, the correct construction of "means … for transmitting" must include both.

MobileMedia attempts to eliminate the modem from the construction by ignoring the claimed function. The district court and the parties agreed that the function of "means … for transmitting" is "to ***transmit a picture captured by the camera*** and processed by the processing unit to another location using a radio frequency channel." A122.[1] The '078 Patent discloses transmission of different types of data, including, "a picture … taken by camera," "a text or a figure written or drawn on digitizer pad," and text messages for "Short Message Service." A21067 (4:51-52), A21069 (7:27, 8:8). The structure corresponding to

---

[1] Although claim 73 recites "means … for transmitting image information," the district court and the parties construed the function as transmitting "a picture captured by the camera." This construction is necessary because the patent owner equated "image information" with "a photographic image" when distinguishing prior art before the PTO. A28470-71; A28669.

"means … for transmitting" must be linked to the claimed function of transmitting a camera-captured picture, not other types of data.

Ignoring the claimed function, MobileMedia relies on structure linked to the transmission of non-camera data as support for its construction. Opp. at 41-42. MobileMedia argues a modem is unnecessary for data transmission over a "digital (GSM) network." *Id.* But the portion of the specification cited by MobileMedia links the "digital GSM system" to the transmission of SMS text messages, not camera-captured pictures. *Id.* at 13-14. As acknowledged by MobileMedia, "the question is not what structures a [POSITA] would know are capable of performing a given function, but what structures are specifically disclosed and ***tied to that function*** in the specification." *Id.* at 49 (citing *Saffran v. Johnson & Johnson*, 712 F.3d 549, 563 (Fed. Cir. 2013)) (emphasis added). Thus, regardless of whether a "digital GSM system" is capable of transmitting camera pictures, the only disclosed structure tied to the claimed function in the specification is a modem interfaced with a mobile phone unit.

MobileMedia relies on language like "preferable" and "for instance" from the specification to try to improperly broaden the scope

of "means … for transmitting." Opp. at 42-47. This reliance is unavailing. "A specification that merely mentions the possibility of alternative structures without specifically identifying them is not sufficient to expand the scope of the claim beyond the example used." *Faroudja Labs., Inc. v. Dwin Elecs., Inc.*, 76 F. Supp. 2d 999, 1003-04 (N.D. Cal. 1999) (citing *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1551 (Fed. Cir. 1997)). In *Fonar*, this Court found the specification's statement that "other waveforms may be used" does not expand the scope of a means-plus-function term beyond the specific waveform linked to the claimed function. *Fonar,* 107 F.3d at 1551. Similarly, in *Saffran*, this Court found the specification's statement that "the linkages can be made of any suitable bond" does not expand the claim scope beyond the only chemical bond linked to the claimed function. *Saffran*, 712 F.3d at 563.

The cases cited by MobileMedia do not support the proposition that "preferable" and "for instance" can expand claim scope beyond the specification. Opp. at 42-45. In *Versa Corp. v. Ag-Bag International Ltd.*, this Court found "flutes" to be non-essential for "means … for creating air channels" because the specification disclosed an

embodiment that performs the claimed function with only a "perforated pipe," not because "flutes" is described as "preferred." 392 F.3d 1325, 1329 (Fed. Cir. 2004). In contrast, the '078 Patent does not disclose any embodiment that performs the claimed function without a modem. Similarly, in *Golight, Inc. v. Wal-Mart Stores, Inc.*, this Court found the 360º angle superfluous for and thus unlinked to the claimed function. 355 F.3d 1327, 1334-35 (Fed. Cir. 2004). Neither case supports MobileMedia's attempt to expand "means … for transmitting" beyond the disclosed structure linked to the claimed function.

MobileMedia also relies on claims improperly added during reexamination. Opp. at 47-48 n.8. Claims 77-79—which depend from claim 73—were added while the district court litigation was pending and after claim 73 was confirmed by the PTO. A30293-99. Claims added during reexamination that are not needed "to distinguish the claimed invention from the prior art or to respond to an adverse decision as to the patentability" are impermissible under 35 U.S.C. § 305. *Sw. Bell Tel. Co. v. Arthur A. Collins, Inc.*, 279 F. App'x 989, 992 (Fed. Cir. 2008); *see also In re Freeman*, 30 F.3d 1459, 1468 (Fed. Cir. 1994) ("amendment of claims during reexamination is limited to

amendment in light of prior art raising a substantial new question of patentability"). Because claims 77-79 were added after confirmation of claim 73, they are invalid and cannot support MobileMedia's claim construction.

The duty to clearly link structure to the recited function is the "quid pro quo for the convenience of employing § 112, P 6." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). Because the '078 Patent specification links only a telefax modem connected with a mobile phone unit to the transmission of camera-captured pictures, the proper construction of "means … for transmitting" must include a modem.

### 2. The District Court Incorrectly Construed "Means For Processing And For Storing"

MobileMedia does not dispute that the structure corresponding to the camera unit's "means for processing and for storing" should be the camera unit's constituent components—processor 23 and memories 24 of Figure 5—and not system-level processor 4 and memories 13 shown in Figure 3. Opening 53-56.







**’078 Patent, Figures 3 and 5 (A21063-64) (annotated)**

Rather, MobileMedia disputes whether processor 23 and memories 24 are dedicated to performing camera functions. Opp. at 50-54. MobileMedia’s arguments are unsupported.

In the ’078 Patent specification, camera-captured data are only transmitted out of the camera unit; the specification never teaches or suggests importing non-camera data into the camera unit. A21067 (3:18-21, 4:57-62), A21068 (5:17-21). Although the specification discloses sending control signals to the camera, there is no disclosure of importing external data into the camera unit for storage or processing. A21067 (3:54-65). For example, text and images entered through the digitizer pad are stored in the main system memory, not the camera unit’s memory. A21069 (7:28-30). Indeed, the camera unit’s processor 23 and memories 24 are collectively referred to as the “image processing

unit 14c," further indicating they are dedicated to processing and storing camera images. A21067 (4:29-31). The specification does not support using the camera unit to process or store non-camera data, and MobileMedia fails to identify any embodiment that uses camera components for non-camera functions. Thus, the proper construction of the camera unit's "means for processing and for storing" must be limited to processing and memory components dedicated to the camera unit.

Apple's construction does not modify the function of the claim term, but the construction is necessary to describe the proper structure corresponding to that function. Without "dedicated," the district court's broad construction allowed MobileMedia to satisfy the "means for processing and for storing" limitation with the iPhone's image processor and main memory. A122-24. But these components correspond to the '078 Patent's camera processor 23 and system-level memory 13, not the structure corresponding to the means-plus-function term.




**’078 Patent, Figures 3 and 5 (A21063-64) (annotated)**

The accused iPhones have nothing equivalent to memory unit 24 in Figure 5. Literal infringement of a means-plus-function term requires a structure in the accused device that performs “the identical function recited in the claim and [is] identical or equivalent to the corresponding structure in the specification.”[2] *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003). MobileMedia does not dispute that the iPhone lacks camera-specific memories and that it relied only on the “main memory of the iPhone” for its infringement case. Opening 18, 59-60. MobileMedia also does not dispute that the iPhone’s “main memory” stores system-level data

---

[2] MobileMedia concedes it “does not allege doctrine of equivalents with respect to [the ’078] patent.” A8302.

like the operating system, and is thus equivalent to the ’078 Patent’s system-level memory unit 13. *Id.* Accordingly, if this Court finds that claim 73’s “means … for storing” corresponds to memory unit 24 of Figure 5 and not memory unit 13 of Figure 3, this Court should reverse the infringement judgment.

### B. The District Court Erred In Denying JMOL Of Invalidity Of Claim 73

The district court found that the sole issue in dispute at trial with respect to Apple’s obviousness challenge was whether it would have been obvious to combine Kyocera and Lucent. A59. Apple’s opening appeal brief demonstrates that claim 73 is obvious over Kyocera and Lucent as a matter of law. In opposition, MobileMedia attempts to manufacture new factual disputes by mischaracterizing the record, contesting a claim limitation admitted by its expert, and introducing a new argument not presented at trial. MobileMedia’s arguments must be rejected.

#### 1. MobileMedia Mischaracterizes The Record

First, MobileMedia attempts to distinguish the prior art by relying on nonexistent claim limitations. MobileMedia argues the prior art does not disclose a “tightly-integrated” design. Opp. at 2, 10, 15. But

"tight integration" is not a claim limitation of claim 73.[3] A20445 (1367:22-24); A21073 (16:1-18). MobileMedia's expert admitted the only "integration" required by claim 73 is for a microprocessor to perform two camera-related functions—control the camera based on user input and process image data. A20557-58 (1479:15-1480:2). There is no dispute the prior art discloses using a single microprocessor for performing these functions. A57619 (3:21-30, 3:47-50).

Similarly, MobileMedia relies on an irrelevant distinction between "videophones" and "camera phones." Opp. at 10. Nothing in claim 73 requires still images or excludes video images. Moreover, both Kyocera and Lucent disclose capturing still images. Opening 19-22.

Second, MobileMedia mischaracterizes the prior art. MobileMedia argues Kyocera discloses only a "physical colocation" of camera and phone components "without integrating the electronics." Opp. at 15-16, 18. MobileMedia made the same argument at trial, but its expert

---

[3] MobileMedia's argument is also wrong because the '078 Patent does not disclose "tightly integrat[ing]" camera and telephone circuits, but discloses a distributed architecture wherein the camera has its own processor and memory. A21063-64.

admitted that Kyocera's camera is electrically connected to the telephone circuits. A20460-61 (1382:18-1383:6); A20547 (1469:7-18). This connection is no different than the "interface 22" connecting the '078 Patent's camera and telephone circuits. A21067 (4:25-29). MobileMedia also mischaracterizes Lucent by arguing it does not disclose a "camera phone," even though MobileMedia admits the Lucent device integrates camera and telephone components. Opp. at 19.

Third, MobileMedia falsely claims the PTO confirmed claim 73 over the Kyocera-Lucent combination. Opp. at 15 n.3, 20. The PTO never considered the Kyocera-Lucent combination before trial. Although Kyocera was listed on an Information Disclosure Statement filed with the PTO (with hundreds of other references), MobileMedia's expert admitted at trial the PTO "[d]idn't say a word about the substance of [Kyocera]." A20554 (1476:4-12). As of the date of MobileMedia's opposition, claim 73 stands rejected before the PTO over the Kyocera-Lucent combination based a recent finding that this

combination raises "a substantial new question of patentability." Reexamination No. 90/012,952, Office Action of 2/21/2014, at 2, 14-24.[4]

### 2. There Was No Factual Dispute At Trial That The Kyocera-Lucent Combination Discloses All Elements Of Claim 73

Relying solely on claim 73's "for later recall" limitation, MobileMedia challenges the district court's finding that Kyocera and Lucent disclose all limitations of claim 73. Opp. at 55-58. But there was no dispute at trial because MobileMedia's expert and counsel admitted the prior art discloses storing pictures in memory "for later recall." A20547-48 (1469:19-1470:5); A20628 (1550:5-7).

Regarding Kyocera, MobileMedia attempts to re-argue its "pass through" theory that was disproven at trial by its own expert. Opp. at 55-56. MobileMedia cites to its expert's direct testimony that pictures captured by the Kyocera device are passed through for immediate

---

[4] Apple requests the Court take judicial notice of the PTO's February 21, 2014 Office Action, which disproves MobileMedia's arguments. *See Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013) ("It is proper to take judicial notice of a decision from another court or agency at any stage of the proceeding, even if it was not available to the lower court.").

transmission without retention in memory. *Id.* (citing A20461-62). But on cross-examination, Dr. Meldal conceded his earlier testimony was incorrect because Kyocera discloses local storage of pictures in memory:

> Q. Okay. One other thing. I believe you said something like the purpose of this Morita [Kyocera] reference is to be able, because memory was so limited then, you wanted the user to be able to take a picture and send it immediately rather than store it locally; right?
>
> A. Or words to similar effect.
>
> Q. Right. But you'll agree, I mean, Morita does show some storage locally of image data; right?
>
> A. Yes, it does.
>
> Q. So the problem was you couldn't store a lot of pictures, you could store some pictures?
>
> A. Morita a laws [allows] for some pictures, yes.

A20547-48 (1469:19-1470:5). Apple's expert also confirmed Kyocera discloses storage of pictures in memory. A20327 (1249:20-23).

During closing arguments, MobileMedia's counsel admitted the Kyocera device can "store a couple pictures." A20626 (1548:3-5). He then conceded there was no dispute over Kyocera's disclosure of "for later recall," but attempted to raise a new dispute over a different limitation ("for later processing"):

> When the image is stored here (indicating), ***it's stored for later recall***, but it's not stored for later processing, because it just goes out.

A20628 (1550:5-9). Based on these admissions, there was no dispute at trial that Kyocera discloses storing pictures "for later recall."

In its opposition, MobileMedia does not appear to challenge Kyocera's disclosure of "for later processing." Even if it did, there can be no dispute about Kyocera's disclosure of image storage "for later processing" either. As shown in Figure 1 below, Kyocera discloses that pictures recalled out of memory 26 are decoded for "playback" or modulated for transmission. A57598-602 ¶¶ 2, 6, 11; A57609 Fig. 1. Thus, pictures stored "for later recall" are also stored "for later processing."




**Kyocera, Figure 1 (A57609) (annotated)**

Regarding Lucent, MobileMedia did not contest the "later recall" limitation at trial. A20463-71 (1385:24-1393:14); A20620-34 (1542:2-1556:13). Apple's expert testified that Lucent discloses the "camera unit" and all constituent elements by comparing the claim limitations to Figure 2 of Lucent, which includes a memory ("RAM 207") for storing images. A20349 (1271:17-25); A57615 (Fig. 2). Apple's expert also showed the jury demonstratives citing excerpts of Lucent's specification, including the portion disclosing: "The image output from CCD 203 is processed in micro-controller 205 to enhance presentability, illustrated by dithering, and then stored, in compressed digital form, in a random access memory (RAM) 207." A20351-52 (1273:21-1274:14) (explaining

A57619 (3:47-50)). MobileMedia never challenged this testimony about Lucent's disclosures. Moreover, Lucent not only discloses storing images for later recall, but also discloses processing images at a later time during recall: "dithering (or other image processing) can be performed at the time that the image is retrieved for printing or transmission, rather than at the time that the image is stored in RAM 207." A57620 (6:50-54).

MobileMedia cannot now hinge claim 73's validity on a claim limitation that its expert and counsel expressly admitted was disclosed in the prior art. This Court should affirm the district court's finding that "there was no material dispute at trial that Kyocera and Lucent, together, disclose all limitations of claim 73." A59. But if this Court finds that the jury could have based its validity verdict on a perceived dispute over "for later recall," it should find that verdict unsupported by substantial evidence. *See Pannu v. Iolab Corp.,* 155 F.3d 1344, 1348 (Fed. Cir. 1998) (JMOL appropriate when "the jury's findings, presumed or express, are not supported by substantial evidence").

### 3. Combining Kyocera With Lucent Would Have Been Obvious To A Person Of Ordinary Skill

Apple identified compelling evidence—supported by prior art disclosure and expert testimony—that a person of ordinary skill in the art would have been motivated to combine Lucent's microprocessor with Kyocera's camera phone. Opening 61-69. MobileMedia does not challenge this evidence, but relies on its expert's opinion that a skilled person would have been incapable of combining the two references. Opp. at 59-61. Because "[a]n expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all," Dr. Meldal's bare testimony is insufficient to support claim 73's validity. *Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1341 (Fed. Cir. 2013), *rev'd in part, vacated in part on other grounds, cert. denied,* 2014 WL 102440 (U.S. Jan. 13, 2014) (No. 13-477).

Dr. Meldal's testimony contradicts established law and undisputed evidence. Dr. Meldal's contention that "the combination of camera and phone was beyond the level of those of ordinary skill at the time of the invention" (Opp. at 60) ignores the legal standard defining the level of ordinary skill. A person of ordinary skill must be "presumed to know" the contents of the prior art. *Union Carbide Corp. v. Am. Can*

*Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984). Both Kyocera and Lucent disclose a camera-phone device, *i.e.*, "the combination of camera and phone." A skilled person is presumed to know the contents of these references, and therefore would have known how to combine a camera and phone. *Id; see also Impax Labs., Inc. v. Aventis Pharm. Inc.*, 545 F.3d 1312, 1316 (Fed. Cir. 2008) (finding prior art is presumed to be enabled). Accepting Dr. Meldal's opinion that a camera-phone combination was beyond the level of ordinary skill would require the Court to assume that a skilled person was unaware of the prior art. Likewise, Dr. Meldal's opinion that a skilled person "would not have been capable of combining" a microprocessor with Kyocera's camera phone (Opp. at 60) would require an assumption that a skilled person was unaware of Lucent's disclosure of integrating a microprocessor in a camera phone. A57619 (3:27-30).

MobileMedia's citation to Dr. Meldal's testimony only highlights his misapplication of the level of ordinary skill. Opp. at 60 (citing A20464-65). Dr. Meldal relied on his experience teaching "an average student" at the California State University as purported support for his opinion. *See id.* But an average university student has neither a

bachelor's degree nor the two years of relevant experience required to qualify as a person of ordinary skill for the '078 Patent. A20464 (1386:12-18); A20285-86 (1207:19-1208:14). Thus, Dr. Meldal's non-obvious opinion is not based on a person of ordinary skill in the art, but an unskilled person unaware of the relevant art.

MobileMedia also relies on the alleged "complexity" of the combination, but fails to explain why "sophisticated software and hardware integration development" is necessary. Opp. at 62. The '078 Patent mentions a microprocessor but never discusses its software or hardware designs, presuming that such details were well known to a skilled person. A21066 (2:39-48). By comparison, Lucent discloses its implementation details in much greater detail, including the specific model of the microprocessor (*i.e.*, the "3210 chip available from AT&T") and design of its software. A57619 (3:27-30); A57620 (5:26-6:42). MobileMedia fails to explain why Lucent's disclosure of software and hardware integration is insufficient.

MobileMedia introduces a new argument based on Kyocera's publication date.[5] Opp. at 15, 63-64. This argument was never presented at trial and is unsupported. First, near-simultaneous inventions made "within a comparatively short space of time" support rather than negate an obviousness finding. *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010). Thus, Kyocera and Lucent's independent developments of camera-phone designs within a few years before the '078 Patent demonstrate claim 73's obviousness. Second, MobileMedia misrepresents that Kyocera is "dated just six days before the priority date of the '078 Patent" and thus demonstrates the state of the art at the time of the alleged invention. Opp. at 15. Kyocera was filed in Japan approximately a year and a half

[5] MobileMedia inconsistently argues a long gap between the prior art and the patent indicates non-obviousness (Opp. at 70-71) and a short time between the prior art and the patent also indicates non-obviousness (*id.* at 63).

before the '078 Patent's foreign filing date, not six days.[6] A21062, A21074; A57596.

MobileMedia's conclusory expert testimony cannot overcome Apple's overwhelming evidence of obviousness. With evidence supporting multiple motivations to combine and the lack of any secondary factors countering those motivations, the combination of a microprocessor with a camera phone is clearly "the predictable use of prior art elements according to their established functions" such that it is "the product not of innovation but of ordinary skill and common sense." *KSR,* 550 U.S. at 417, 421.[7]

---

[6] There is no dispute Kyocera was published before the priority date claimed by MobileMedia and is therefore prior art to the '078 Patent under 35 U.S.C. § 102(a). A20772 (1694:15-23); A57596.

[7] MobileMedia improperly relies on the outdated obviousness standard from *PharmaStem Therapeutics Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007), which has been superseded by *KSR*. Opp. at 64; *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238-39 (Fed. Cir. 2010).

## II. '068 Patent, Claim 23

### A. The Infringement Judgment Must Be Reversed Because The District Court's Construction Of "Listing Said Processing Items" Is Incorrect

The specification and claims do not support the district court's construction of "listing said processing items" as "the processing items are grouped together in an orderly fashion." A91. Although the '068 Patent discloses displaying processing items in distinct formats of lists or matrices, the district court construed "listing" to encompass any display of processing items regardless of format. To properly reflect the term's plain and ordinary meaning and consistent use in the specification, "listing said processing items" should be construed as "a series of processing items displayed one after the other." Under this correct construction, Apple does not infringe claim 23 as a matter of law.

#### 1. The District Court Erroneously Construed "Listing Said Processing Items" Broader Than The Disclosed "List" Format

MobileMedia agrees that the ordinary meaning of a list requires a "single row or column," but confuses the issue by characterizing a list as "***a matrix*** with a single row or column." Opp. at 24 (emphasis added). The specification and claims, however, expressly distinguish between

the two alternative display formats—a list or a matrix—and do not support MobileMedia's argument that a list is a species of matrix. Apple's proposed construction reflects the agreed single row/single column aspect by describing a list as "a series of … items displayed one after the other."

Based on a single, inapposite phrase in the specification, MobileMedia argues the disclosed list and matrix formats are necessarily related—specifically, that "a matrix is a subset of a list"—and, on that basis, that the list format must be construed to encompass both formats. Opp. at 5, 23, 65, 66. That single phrase, used once in the specification, refers to "a list in which processings for each call are arranged in a matrix." Opp. at 22-24, 65 (citing A32744 (13:1-5)). That phrase, however, fails to disclose how a list could constitute items arranged in a matrix. MobileMedia proposes that one example of a list arranged in a matrix is a "double-columned 'matrix,'" but that theory defies logic, especially given MobileMedia's agreement that a list is limited to a "single row or column." Opp. at 23-24. And MobileMedia does not seek to establish that the patentee acted as a lexicographer to

define the term "listing" or disavowed some scope of it. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

MobileMedia's argument also "ignores the fact that the person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent." *See Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368-69, 1375 (Fed. Cir. 2012) (finding unreasonable a proposed claim construction that relied on "a single, inapposite sentence in the specification to redefine the meaning of the claim"). The entirety of the specification other than the phrase cited by MobileMedia affirmatively distinguishes a list from a matrix; correlates each of the five embodiments to the format of either a list or a matrix; explains why either a list or a matrix is advantageous over the other in different circumstances; and recites claims directed to either a "list" or a "combination" but never both. Opening at 70-73. Apple's proposed construction, which is consistent with the term's plain and ordinary meaning, follows the patent's uniform treatment of the term "list" with the exception of a single, ambiguous phrase.

The district court's construction, by contrast, does not limit the claim scope to "listing said processing items." Requiring only that the processing items be "grouped together in an orderly fashion" fails to narrow "listing" from all possible display formats. The only way to display processing items on a single device screen is to display them "grouped together." No intrinsic or extrinsic evidence discloses what might be considered "an orderly fashion." MobileMedia's contention that "in an orderly fashion" imposes an additional limitation because "it defines a specific manner (*i.e.*, an orderly manner)" (Opp. at 66) simply paraphrases the construction itself without explaining how it does, in fact, define a specific display format.

To give any effect to the limitation, "listing said processing items," and to provide the meaning required by the specification and customary usage, this Court should reverse and adopt Apple's construction.

#### 2. The Infringement Verdict Cannot Be Maintained Under A Proper Construction Of "Listing Said Processing Items"

Under the correct construction, Apple does not infringe as a matter of law. No reasonable jury could find the accused iPhones display processing items in "a series … one after the other" because the

accused processing items are displayed as rectangle icons in a 3-by-2 matrix of icons, interspersed with icons for non-processing items, and have no single or linear spatial relationship. Opening at 75-77. MobileMedia argues the verdict would stand even under Apple's construction, but its reasons demonstrably mischaracterize the record. Opp. at 66.

First, MobileMedia calls Apple's argument about the spatial relationship of the accused processing items a "proposed new construction" that Apple waived by "never assert[ing] this additional limitation below." Opp. at 67. MobileMedia is wrong. Apple's argument does not propose a new construction but explains why the accused processing items are not displayed in "a series … one after the other." Moreover, Apple raised the same argument before the district court. A5404 ("there is no single or linear relationship"); A17250.

Second, MobileMedia asserts the Court should not consider whether the "End" icon is formatted in a "list" because its expert "did not identify the 'End' key at trial as a processing item." Opp. at 68. Through summary judgment, however, MobileMedia consistently argued that "the accused products infringe … under Apple's proposed

construction because the processing items, namely Swap, Merge ***and End***, are displayed one after the other." *See* A8284, A8287 (emphasis added). Because the district court denied Apple's non-infringement argument based on its construction of the "listing" term, this dispute—including MobileMedia's unmistakable identification of the "End" icon as a processing item—was not at issue in the trial.

As a matter of law, the "Swap" and "Merge Calls" icons, alone, are not displayed in "a series … one after the other" because they are displayed as rectangle icons within a 3-by-2 matrix, interspersed with non-processing items. Opening at 75-76. MobileMedia's expert confirmed this conclusion by opining that such formatting in prior art does not constitute a "list." Opening Brief at 76. Although MobileMedia suggests its expert's opinions are irrelevant because they were "written ***before*** claim construction" (Opp. at 68), the opinions were still made applying Apple's proposed construction:

> I understand that Apple has proposed that the claim term "a list of said processing items" be construed as "a series of processing items displayed one after the other." Sudo '003 does not disclose "a list."

A6134-6139 ¶ 536; *id.* ¶ 654 (prior art Rogers '386); *id.* ¶¶ 515-516 (prior art Orbitor). Because the record contradicts MobileMedia's arguments, the Court should reverse the infringement judgment.

### B. The District Court Erred In Denying JMOL Of Invalidity

The Court should also reverse the district court's denial of JMOL of invalidity of claim 23. The parties dispute only the ultimate question of obviousness, not any underlying *Graham* factor; thus, this Court should decide the issue on de novo review. *Soverain Software*, 705 F.3d at 1339.

MobileMedia argues that Bayless fails to render obvious one limitation: using "only a single" predetermined selection operation. A38. To do so, however, MobileMedia imposes an improper claim construction by limiting the meaning of "only a single … operation" to pressing a single key, and nothing else. Opp. at 70 ("Bayless says nothing about a single-key selection operation."). No language or construction of claim 23 limits the claimed "operation" to a "single-key" operation. Thus, the non-obviousness verdict rests on this nonexistent claim limitation. *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1380 (Fed. Cir. 2009); *Soverain Software*, 705 F.3d at 1339

(rejecting distinctions for obviousness "not embodied in the claims" or "reflected in the claim construction"). In response, MobileMedia argues Apple is "improperly switching claim constructions" of the term "operation." Opp. at 72. To the contrary, Apple's argument is based on the plain and ordinary meaning of "operation," the same meaning the jury was instructed to apply. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

Even under MobileMedia's argument that "only a single … operation" means pressing a single key (Opp. at 72), claim 23 is obvious as a matter of law. While Bayless discloses the use of a two-key "Hotkey" (such as Ctrl and 0), using a single key as a Hotkey (such as F1) was well known; a person of ordinary skill in the art would have found it obvious to substitute a single-key Hotkey in the place of

Bayless's two-key Hotkey. Opening at 77-80.[8] The distinction amounts to a contrived choice between two well-known alternatives, dictated by only design preference—not an invention.

MobileMedia argues the jury could reasonably have found pressing a single key to be non-obvious based on two untenable theories. First, MobileMedia claims Apple's expert Dr. Balakrishnan offered only a "single conclusory statement" to support Apple's obviousness position. Opp. at 24-25, 69. But the transcript does not support MobileMedia's assertion.

Dr. Balakrishnan defined the level of ordinary skill in the art (A20015-16 (938:16-939:14)), and testified that Bayless discloses to a person of that ordinary skill every limitation of claim 23. A20015-26

---

[8] MobileMedia complains that Apple's citations to 1989 and 1990 district court opinions that describe using single-key operations—citations used only to corroborate the testimony of Apple's expert—were "not presented to the jury." Opp. at 71. But obviousness is a question of law, *KSR,* 550 U.S. at 427, and "[i]t is proper to take judicial notice of a decision from another court or agency at any stage of the proceeding." *Function Media,*708 F.3d at 1316 n.4. Apple made the same argument in JMOL briefing (A18735). *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251-52 (Fed. Cir. 2005) (no waiver for "advocating the same concept").

(938:10-947:17). He explained the only "fight" between the parties was whether "Bayless has a single predetermined selection operation." A20025 (947:19-25). He explained why "only a single … operation" would have been obvious, including that Bayless's two-key Hotkey is already "analogous to hitting the menu key" disclosed by the '068 Patent, and "not much different" from well-known key assignments like pressing the Ctrl and C keys to perform the operation of copying text, or pressing Ctrl, Alt, and Delete to perform the operation of rebooting the machine. A20022-26 (944:25-948:11). He testified that the term "Hotkey" would have called to the mind of a person of ordinary skill "one or more physical keys that results in a single action," which could include the key "F1, for example." A20043-45 (965:14-967:10).
Dr. Balakrishnan testified that reprogramming the two-key Hotkey in Bayless to a single-key Hotkey was not a point of novelty, but something that "ordinarily would be done." *Id.*

Second, MobileMedia argues it "gave the jury substantial evidence that *Bayless* [] taught away from the patented invention." Opp. at 70-71. MobileMedia's two alleged bases, however, do not support this theory and misrepresent claim 23. MobileMedia states, "16 months

separated Bayless from the patent." Opp. at 70. But that elapsed time has no legal bearing on whether Bayless taught away from using a single-key operation.[9] MobileMedia also argues Dr. Meldal's testimony showed a person of ordinary skill would not have thought to use the Bayless prior art system on "the cell phone of the '068 Patent." Opp. at 5, 21, 25, 71. But as Dr. Meldal conceded, claim 23 "[is]n't limited to a cellphone." A20493-94 (1415:5-1416:21). Thus, Dr. Meldal's testimony is insufficient to support a finding of non-obviousness.

Because MobileMedia responded to Apple's clear and convincing evidence of obviousness with only testimony mischaracterizing the claims, and because the alleged distinction between the prior art and claim 23 is, at most, trivial, this Court should find claim 23 invalid as obvious.

---

[9] If MobileMedia is suggesting there existed a long-felt but unresolved need, MobileMedia presented no facts in support of any need, and the jury was not instructed to consider ***any*** secondary indicia of non-obviousness. A20775-78 (1697:12-1700:13). Moreover, this Court has recently found gaps of approximately one year to evidence simultaneous invention, which favors obviousness. *See, e.g.*, *Geo M. Martin,* 618 F.3d at 1305-06.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment of infringement and validity of the '078 Patent and the '068 Patent and enter judgment of non-infringement and invalidity.

# APPLE'S RESPONSE TO MOBILEMEDIA'S CROSS APPEAL REGARDING '075 AND '231 PATENTS

## INTRODUCTION

This Court should affirm the district court's non-infringement and invalidity judgments for claims 5, 6, and 10 of the '075 Patent and the non-infringement judgment for claims 2, 3, 4, and 12 of the '231 Patent.

The '075 Patent claims rejecting a second incoming call to a mobile phone by sending a "rejection message" that "indicates" to the wireless system that it must immediately release the call and that is sufficient to cause the call to be immediately released. MobileMedia appeals the non-infringement judgment, arguing the accused DISCONNECT message is sufficient to immediately release the call. But MobileMedia fails to offer evidence that the DISCONNECT message also "indicates" to immediately release the call. For invalidity, prior art GSM 04.83 and GSM 04.08 indisputably disclose all claim limitations (with or without the prior art '068 Patent). MobileMedia's appeal requires ignoring GSM 04.83's explicit instruction to use GSM 04.08 to release a second incoming call, and believing the fiction that one of ordinary skill would be "discouraged" from combining the two parts of the GSM standard.

Regarding the ’231 Patent, which concerns silencing the alert sound associated with an incoming call, the district court correctly construed the term “to change a volume of the generated alert sound” in claim 12 to mean “to alter the degree of loudness of the alert sound that is being generated without cutting off the telephone circuit.” A115. This construction captures the term’s customary and ordinary meaning and is supported by all of the intrinsic and extrinsic evidence. MobileMedia’s only challenge to this construction rests on a flawed application of claim differentiation principles and is inconsistent with the language of the claims and specification. The district court correctly entered summary judgment of non-infringement of claim 12 and its dependent claims 2, 3, and 4 because it is undisputed that the accused iPhones “do not reduce, increase, mute, or otherwise change the volume of the audio playback; instead, they stop the playback of the ringtone, or sound alert, file.” A116. Because the district court’s claim construction is correct as a matter of law and there is no dispute that the accused iPhones do not infringe under this correct construction, this Court should affirm the non-infringement judgment.

## COUNTER-STATEMENT OF THE ISSUES

### I. ’075 Patent, Claims 5, 6, and 10

1. Whether the district court properly entered a non-infringement judgment when MobileMedia failed to present evidence that the accused DISCONNECT message “indicates” to the wireless system that it must immediately release the incoming call, as the claims require.

2. Whether the district court properly entered an invalidity judgment based on obviousness when GSM 04.83 and GSM 04.08 disclose all claim limitations, GSM 04.83 instructs combination with GSM 04.08, and the ’068 Patent further teaches call rejection for second incoming calls.

3. Whether, alternatively, the district court’s invalidity judgment should be affirmed because the claims are anticipated by GSM 04.83 and GSM 04.08, which constitute a single reference.

### II. ’231 Patent, Claims 2, 3, 4, and 12

4. Whether the district court correctly construed “to change a volume of the generated alert sound” to mean “to alter the degree of loudness of the alert sound that is being generated

without cutting off the telephone circuit," consistent with the term's customary and ordinary meaning.

5. Whether the district court correctly granted summary judgment that the accused products do not infringe because it is undisputed they do not practice these claims' "to change a volume" limitation under the court's proper construction.

## STATEMENT OF THE CASE

### I. '075 Patent

#### A. Alleged Invention And Asserted Claims 5, 6, and 10

The '075 Patent claims a method and apparatus for rejecting a second incoming call. A43457-71. All asserted claims require that a mobile phone, which is already on a call, receive an incoming second call, determine to reject the second call, and send a "rejection message" to release the call. A43467, A43471. The rejection message must include an "information element indicating to the wireless system that the wireless system is to immediately release the incoming call." *Id.*

#### B. Claim Constructions

The district court construed a "rejection message" as "a single communication sufficient to cause the base station to 'immediately release the incoming call,'" and "the wireless system is to immediately

release the call" as "the wireless system must, without requiring any additional action by or communication from the mobile phone, 'release the incoming call.'" A18585.

### C. Accused Products And The Non-Infringement Judgment

The accused Apple products for the '075 Patent are the iPhone 3G, iPhone 3GS, and iPhone 4 (GSM Model) ("GSM iPhones"). Each uses the GSM standard.

When a GSM iPhone is on a call and receives an incoming second call, the user may decline the second call by tapping the Decline icon. To initiate the process of releasing the call, the iPhone sends the network base station a DISCONNECT request with informational cause 17 ("user busy") and enters a "disconnect request" state, pursuant to the GSM standard. *See, e.g.*, A56438-39 §5.2.2.3.2; A56248-50 §§1.1, 1.3.1. Upon receipt of the DISCONNECT message, the base station returns a RELEASE message and enters a "release request" state, in which the base station "wait[s] for a response" from the iPhone. A56455 §5.4.3.2; A56429 §5.1.2.2.13. The iPhone then responds with a RELEASE COMPLETE message. Upon receipt of the RELEASE COMPLETE, the network releases the second call. A56455 §§5.4.3.3 - 5.4.3.4; s*ee also*

A19942 (864:6-25); A20150-51 (1072:15-1073:12); A20153-58 (1075:14-1080:21). It is undisputed this is how GSM iPhones decline second incoming calls. During summary judgment, the district court held that the accused DISCONNECT message does not meet the "immediately release" limitation, because "additional communication from the iPhones" is required to release the call. A104-105. The district court, however, allowed MobileMedia to proceed to trial on a theory that a base station also may release calls based on timers. *Id.*

At trial, MobileMedia argued that GSM iPhones infringe because the GSM standard includes an "abnormal case." In the "abnormal case," a base station may release a call after the expiration of two timers if a mobile phone sends a DISCONNECT message, but then fails to respond to messages from the base station, as required by the standard. A56455-56 §5.4.3.5; A19661-31 (583:22-585:13). MobileMedia presented no evidence that an iPhone ever released a call this way. MobileMedia relied entirely on two parts of the GSM standard: GSM 24.008, defining this "abnormal case," and GSM 24.083, instructing use of GSM 24.008 for second incoming calls. *See* A20162

(1084:15-21); A19945 (867:13); A19822 (744:10-15); A19669-74 (591:1-596:15).

MobileMedia argued that in the abnormal case, the DISCONNECT message is "sufficient" to cause a base station to immediately release a call, but ignored the claim requirement that the rejection message also must "indicate" to the wireless system that it must "immediately release" the call. *See, e.g.,* A20636 (1558:20-24) ("That disconnect message is sufficient to cause to release the call. That's our infringement case, ladies and gentlemen.") Apple presented evidence that a DISCONNECT message does not indicate to the base station that it must immediately release a call, *i.e.,* release the call without requiring any additional action by or communication from the mobile phone. Instead, the DISCONNECT message indicates that the base station must send a RELEASE message and enter a "release request" state, in which the base station waits for a response from the mobile phone. *See, e.g.*, A56455 §5.4.3.2; A56429 §5.1.2.2.13; A20159-64 (1081:3-6, 1082:3-8, 1082:20-1083:2, 1084:22-1086:1); A20169-70 (1091:21-1092:2); A20211-12 (1133:9-1134:11).

At JMOL, MobileMedia argued its expert testified that "cause 17," an informational cause that may be sent with the DISCONNECT message, indicates to immediately release the call. *See* A31-34. GSM provides that cause values may be sent with messages to provide information. *See, e.g.*, A56656 §10.5.4.11 ("The purpose of the cause information element is to describe the reason for generating certain messages, to provide diagnostic information in the event of procedural errors and to indicate the location of the cause originator."). Cause 17, for example, indicates "user busy," meaning the "called user has indicated the inability to accept another call." A56761 at H.1.6. Cause 17 does not provide any commands or alter the functionality of the DISCONNECT message. Regardless of the cause number, the DISCONNECT message still indicates that the base station must send a RELEASE message and enter the "release request" state, in which the base station waits for a response from the mobile phone. A56455 §5.4.3.2; A56429 §5.1.2.2.13. The district court therefore found there was no evidence (only conclusory expert testimony) that cause 17 "indicates" to the wireless system that it must immediately release the call. A34.

### D. Prior Art And JMOL Of Invalidity

At trial, Apple presented evidence that combinations of GSM 04.08 and GSM 04.83, or GSM 04.08, GSM 04.83, and the ’068 Patent render obvious the asserted claims.

The named inventors acknowledged in a Provisional Application that “GSM has a feature like this,” *i.e.,* like the claimed invention, and they wanted call rejection for CDMA phones. A43472-77; A20178-79 (1100:12-1101:23). During reexamination, the PTO rejected the claims based on a draft of GSM 04.08 (“Recommendation GSM 04.08”), because “GSM describes a method for selectively rejecting an incoming call to a mobile phone.” A55823, A55828-29. In response, MobileMedia amended claim 10, such that all asserted claims require rejecting a ***second*** incoming call, and argued that Recommendation GSM 04.08 does not disclose this “call waiting” feature. A55835-44, A55851-54, A55860; A44406; A47967. The Examiner allowed the claims, but did not consider GSM 04.83 (Call Waiting) or the ’068 Patent.

GSM 04.83 discloses what MobileMedia argues was missing from GSM 04.08: “Call Waiting” and releasing a second incoming call. GSM 04.83 instructs that a mobile phone and base station “shall act in

accordance with GSM 04.08" to handle and release second incoming calls. A57583-85 §§1.1, 1.3.1; A20182 (1104:3-22); A20185 (1107:9-20). GSM 04.83 specifically refers to "clearing messages" that are found in GSM 04.08. A57585 §1.3.1. GSM 04.08 discloses procedures for call control, including "call clearing" using messages defined in the standard to release incoming calls. A57175 (GSM 04.08 "Call clearing"); A56509 ("call clearing messages"); A20185-86 (1107:21-1108:22); A20230 (1152:8-20). One "call clearing" message disclosed by GSM 04.08 is the same DISCONNECT message that MobileMedia accuses of infringement. *See, e.g.,* A57272-73 §§5.4.2, 5.4.3.1, 5.4.3.2; A20176-78 (1098:7-1100:7). GSM 04.08 also discloses another call clearing message that may be sent to release a call: a RELEASE COMPLETE message. Upon receipt of RELEASE COMPLETE, a base station will release the incoming call, without waiting for additional messaging. A57273 §5.4.3.4. GSM 04.08 discloses that RELEASE COMPLETE may be sent as a first call clearing message, rather than sending a DISCONNECT message. A57262 §5.2.2.3.1. In those circumstances, Apple's expert explained, RELEASE COMPLETE is a "rejection message" that indicates to the base station that is must immediately

release an incoming call. A20180-82 (1102:17-1104:2); A20184-5 (1106:2-1107:8).

It is undisputed GSM 04.83 and GSM 04.08 together disclose all claim elements. *See* A107-109; A25. At summary judgment, however, the district court held GSM 04.83 does not incorporate GSM 04.08 by reference. A109-110. Contrary to MobileMedia's contention, Apple has not "conceded the invention was novel." Opp. at 78. Apple presented evidence of obviousness because Apple could not argue anticipation.

The '068 Patent also teaches rejecting a second incoming call, and discloses that the call control functionality may be performed using "a standard in the GSM system." A32727-48, Figs. 7 (SP2, SP3, SP4, SP5, SP8, SP9) and 6A, 6B, 6D, 1:29-38, 6:6-13, 7:4-9, Fig. 2, 3:16-25; A20192-201 (1114:14-1123:18); A20234 (1156:4-22).[10]

At trial, MobileMedia argued, "the invention is putting rejection from 4.08 onto call waiting." A20642 (1564:15-17). In disputing

---

[10] The '068 Patent directly refutes MobileMedia's claim that the '075 Patent was the "*first* patent to disclose" how a phone could "politely reject a second incoming phone call, when the phone was already active on a first call." Opp. at 3 (original emphasis).

invalidity, MobileMedia ignored GSM 04.83 and argued that one of ordinary skill would be "looking away" from using GSM 04.08 for handling and rejecting second calls. A20481-82 (1403:22-1404:10). At the same time, MobileMedia's expert opined for infringement that GSM iPhones infringe by following GSM 24.083's instruction to use GSM 24.008 to release a second incoming call. A19669-74 (591:1-596:15); A20515-16 (1437:9-1438:14). GSM 24.083 and GSM 24.008 are identical in all relevant respects to their earlier versions, GSM 04.83 and GSM 04.08, respectively. *See* A27-28.

Following the verdict, the district court granted JMOL of invalidity based on "the combination of GSM 04.08 and GSM 04.38, with or without the '068 patent." A25. The district court found that MobileMedia's evidence "did not consider that a person of ordinary skill in the art is presumed to have knowledge of ***all*** prior art references." A29. MobileMedia did not address that one of ordinary skill could "start with GSM 04.83 and follow its instructions to use GSM 04.08." A29. MobileMedia also did not address that the '068 Patent supplies "any additional inventive leap necessary to combine GSM 04.83 and GSM 04.08." A26-27.

## II. ’231 Patent

### A. Alleged Invention And Asserted Claims 2-4 and 12

The ’231 Patent claims an apparatus and method to silence a ringing telephone. A57690. According to the specification, a “conventional” telephone user who received an unwanted call had three options: answer and quickly hang up to forcibly disconnect the call (A57696 (1:17-29)); turn off the telephone (*id.*); or simply wait for the ringing stop at the end of the full ringing cycle (*id.* (1:29-31)).

The ’231 Patent purports to provide a better way to reject an unwanted call. In one embodiment, depicted in Figure 3 below, the user can press the phone’s power key for less than one second to stop the alert sound without changing the state of the incoming call. A57693, A57696-97 (2:57-3:6).




**’231 Patent, Figure 3 (A57693) (annotated)**

In a second preferred embodiment, depicted in Figure 4 below, the user can reduce the volume of the alert sound by pressing the power key for less than one second. A57697 (4:37-47).




**’231 Patent, Figure 4 (A57694) (annotated)**

During reexamination, MobileMedia amended claim 12 to be independent and claims 2, 3, and 4 to depend from claim 12. A57703-06. Reexamined claim 12 claims a “communication terminal for informing a user of a received call from a remote caller by an alert sound” comprising, among other things, an “alert sound generator” and “control means” for controlling the alert sound generator, wherein “said control means controls said alert sound generator ***to change a volume*** of the generated alert sound only for the received call, without affecting the volume of the alert sound for future received calls.” A57703 (2:12-39) (emphasis added). Claim 2 adds the limitation that the

"control means controls the state of said alert sound generator ***to stop the sound***." A57703 (1:30-34) (emphasis added). And claim 3 adds the limitation that the "control means controls the state of said alert sound generator ***to reduce the volume of the sound***." A57703 (1:35-38) (emphasis added).

### B. Accused Products

MobileMedia accuses Apple's iPhone 3G, iPhone 3GS, and iPhone 4 of infringing the '231 Patent. The parties do not dispute the accused iPhones' relevant functionality . A116. The iPhone alerts a user of an incoming call by playing an audio ringtone file with its music/audio playback system. A5398. Pressing the On/Off Sleep/Wake button stops playback of the audio ringtone file. A5398. The iPhone does not reduce, increase, mute, or otherwise change the volume of the audio ringtone playback. A5398-99. In fact, the iPhone offers no functionality for a user to change the volume of the playback of an audio ringtone file while it is being played. A5399.

### C. Claim Construction And Summary Judgment

The district court construed "to change a volume of the generated alert sound" in claim 12 to mean "to alter the degree of loudness of the alert sound that is being generated without cutting off the telephone

circuit." A115. Applying this construction, the district court granted summary judgment of non-infringement of claim 12 and its dependent claims 2, 3, and 4 because it is undisputed the accused iPhones "do not reduce, increase, mute, or otherwise change the volume of the audio playback; instead, they stop the playback of the ringtone, or sound alert, file." A116.

The district court denied MobileMedia's motion for reconsideration. A204-14.

## SUMMARY OF ARGUMENT

The district court properly granted JMOL that GSM iPhones do not infringe claims 5, 6, or 10 of the '075 Patent by sending a DISCONNECT message to release a second incoming call. MobileMedia argues the DISCONNECT message is "sufficient to cause" the base station to immediately release the call, but fails to demonstrate an "information element ***indicating***" that the base station must immediately release a call, as required by the claims.

The district court also properly granted JMOL that claims 5, 6, and 10 of the '075 Patent are invalid in view of GSM 04.83, GSM 04.08 and/or the '068 Patent. MobileMedia's appeal depends on the fiction

that one of ordinary skill would be "discouraged" from combining two sections of the GSM standard, even though GSM 04.83 explicitly instructs their combination to release a second incoming call. GSM 04.83 incorporates GSM 04.08 by reference—presenting an alternative basis to affirm the invalidity judgment.

Regarding the '231 Patent, the district court correctly construed the term "to change a volume of the generated alert sound" in claim 12 to mean "to alter the degree of loudness of the alert sound that is being generated without cutting off the telephone circuit." A115. This construction captures the customary and ordinary meaning of the term and is supported by the intrinsic and extrinsic evidence. MobileMedia's only challenge to this construction rests on a flawed application of claim differentiation principles and would require the Court to rewrite the language of dependent claims 2 and 3.

Applying its construction, the district court correctly granted summary judgment of non-infringement of the '231 Patent. The district court correctly determined that because it is undisputed the accused iPhones do not "reduce, increase, mute, or otherwise change the volume" of the audio ringtone file, let alone "alter the degree of loudness

of the alert sound that is being generated without cutting off the telephone circuit," the accused products "do not practice a control means that controls a sound alert generator 'to change a volume of the generated sound.'" A116-17.

## STANDARD OF REVIEW

Apple incorporates the Standard of Review in its Opening Brief (Opening at 42-43) and adds the following law relevant to its opposition to MobileMedia's cross-appeal.

An appellee can raise "all arguments supported by the record and advanced in the trial court in support of the judgment … even if those particular arguments were rejected or ignored by the trial court." *Bailey v. Dart Container Corp. of Mich.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002); *Glaxo Grp. v. TorPharm, Inc.*, 153 F.3d 1366, 1371-72 (Fed. Cir. 1998).

This Court reviews summary judgment de novo, applying the same standard as the district courts. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012). Summary judgment of anticipation is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1325 (Fed. Cir. 2013). Whether two prior art references should be considered as one for anticipation is a question of law, subject to de novo review. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000).

Factual issues underlying obviousness, including motivation to combine, may be decided as a matter of law. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239-40 (Fed. Cir. 2010).

## ARGUMENT

## I. '075 Patent

### A. The Non-Infringement Judgment Should Be Affirmed Because The Accused DISCONNECT Message Does Not "Indicate" That The Wireless System Must Immediately Release A Call

All asserted claims require the rejection message to include at least one "information element ***indicating*** to the wireless system that the wireless system is to immediately release the incoming call." A43467 (claims 5 and 6), A43468 (claim 10). Applying the district court's construction of "immediately release," the information element must "indicate" to the wireless system that it "must, without requiring

any additional action by or communication from the mobile phone," release the call. A18585.

The district court concluded there was no legally sufficient basis for the jury to find that the accused DISCONNECT message "indicates" to the base station that it must immediately release the incoming second call. A29-34. The evidence showed that the DISCONNECT message indicates that the base station must send a RELEASE message and enter a release request state of "waiting for a response" from the mobile phone. A56455 §5.4.3.2; A56429 §5.1.2.2.13; A20160 (1082:5-8); A20169-70 (1091:21-1092:2); A20211-12 (1133:9-1134:11). The GSM standard requires that a mobile phone "shall" respond to a RELEASE message. A56455 §5.4.3.3; A20157 (1079:9-17); A19806 (728:3-10). If a base station timer expires with no response from the mobile phone, the base station still does not release the call. Instead, it sends another RELEASE message and again waits for a response from the mobile phone. A56455 §5.4.3.2; A56429 §5.1.2.2.13; A20160-61 (1082:20-1083:2); A20162-64 (1084:22-1086:1). MobileMedia's expert confirmed the base station "stays waiting for the response." A19673-74 (595:25-596:6).

On appeal, MobileMedia argues the accused DISCONNECT message is "sufficient to cause" a base station to release a call and this "'sufficient to cause release' evidence ***alone*** was enough to sustain the verdict," and the district court "was wrong to require more." Opp. at 75. As the district court correctly noted, however, MobileMedia's argument ignores "that the information element needs to indicate to the wireless system that it ***must*** immediately release the call." A33. MobileMedia conflated the court's construction that a "rejection message" must be sufficient to cause the base station to immediately release the call with the claim requirement that the rejection message also "indicates" to the base station that it must immediately release the call. *Id.*

MobileMedia also argues that its expert testified that informational "cause 17," sent with a DISCONNECT message, indicates to the wireless system that it must immediately release the call. Opp. at 74. But the district court properly found there was no evidence to support the conclusory testimony. A33-34; *see also* A19665-66 (587:25-588:21); A19669-70 (591:23-592:2); A19674 (596:13-15). The evidence instead showed cause 17 merely indicates "user busy." It can be sent with the DISCONNECT message in the "normal" scenario in which the

base station releases the call only after receiving more messages from the mobile phone, *i.e.*, not "immediately." A19674 (596:10-15); A34; A104-105. Indeed, cause 17 also can be sent with a CALL CONFIRMED message that instructs the base station to continue connecting an incoming call, rather than release it. *See* A56437-38 §5.2.2.3.1; A56248-49 §1.1. Thus, cause 17 does not change the functionality of the DISCONNECT message, which indicates to the base station that it must wait for additional messages from the mobile phone.

Because the evidence establishes that the DISCONNECT message (regardless of whether cause 17 is sent with it) does not indicate to the wireless system that it must immediately release the call, the non-infringement judgment should be affirmed.

### B. The Invalidity Judgment Should Be Affirmed Because The Asserted Claims Are Obvious

#### 1. The District Court Properly Found Claims 5, 6, And 10 Obvious As A Matter Of Law

MobileMedia does not dispute that GSM 04.83 and GSM 04.08 together disclose all claim limitations. Instead, MobileMedia argues only "whether a POSITA at the time of the '075 Patent would have been motivated to combine the prior art *GSM 04.08* and *GSM 04.83*

references to arrive at the claimed invention." Opp. at 78. The district court correctly found that GSM 04.83 not only encourages combination with GSM 04.08, it requires it. MobileMedia's appeal—like its case below—ignores teachings of GSM 04.83, GSM 04.08, and the '068 Patent, contrary to law. The invalidity judgment should be affirmed.

GSM 04.83 instructs that the mobile phone and base station "shall" use GSM 04.08 to handle and specifically to release second incoming calls, stating, "For the release of the waiting call the mobile station and the network shall act in accordance with TS GSM 04.08." A57583-85 §§1.1, 1.3.1; A20523 (1445:11-17); A20532 (1454:1-12); A20519-23 (1441:14-1445:10). GSM 04.83 references GSM 04.08 sixteen times in twenty pages, repeatedly stating that GSM mobile phones and base stations "shall act" in accordance with GSM 04.08 to handle the second incoming call. *See, e.g.,* A20520 (1442:10-23); A20522 (1444:10-16). Apple's expert and engineer testified it would have been "trivial" for an engineer to find the appropriate messaging in GSM 04.08. A20185-87 (1107:9-1109:6); A20230 (1152:8-20); A19941 (863:15-25). GSM 04.83 refers to "clearing messages," and the appropriate messaging in GSM 04.08 is easily found in the "call clearing" section.

*Id.;* A57585 §1.3.1; A57175 (GSM 04.08 table of contents, “Call clearing”). Even the title of GSM 04.83 §1.1 – “Waiting Call indication and confirmation”—points one of ordinary skill to GSM 04.08’s sections for “Call indication” (A57175 §5.2.2.1) and “Call confirmation” (A57175 §5.2.2.3), which disclose GSM 04.08’s call clearing messages, including the DISCONNECT and RELEASE COMPLETE messages. A57262-63 (§§5.2.2.3.1-5.2.2.3.2); *see also* A20185-87 (1107:15-1109:6); A20230 (1152:8-20); A20238-40 (1160:14-1162:5); A19941 (863:15-25).

Despite these clear disclosures, MobileMedia suggests the ’075 Patent provided some inventive teaching that call rejection for a second call was possible. Opp. at 3. The ’068 Patent, however, already taught rejecting a second incoming call, using GSM. *See supra* Section I.D. The district court held it was unrebutted that the ’068 Patent would supply “any additional inventive leap necessary to combine GSM 04.83 and GSM 04.08.” A26-27. MobileMedia does not challenge this finding.

#### 2. A POSITA Would Not Be “Discouraged” From Combining GSM 04.08 And GSM 04.83 When Considering Both References Together

MobileMedia argues that one of ordinary skill would have been “‘discouraged’ from using GSM 4.08 in combination with GSM 4.83”

based on alleged teachings of GSM 04.08 in isolation. Opp. 79. But, as the district court concluded, the law requires that GSM 04.83 and GSM 04.08 be considered together. A29; *see also In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995); *Union Carbide,* 724 F.2d at 1576 ; *Para-Ordnance Mfg. v. SGS Importers Int'l*, 73 F.3d 1085,1090 (Fed. Cir. 1995) (obviousness analysis cannot rely on one reference "teaching away;" teachings of one reference must be weighed alongside teachings of other references). The district court properly held that MobileMedia presented no evidence disputing that "a person of ordinary skill in the art looking at ***both*** GSM 04.83 and GSM 04.08 would find it obvious to combine them." A26 (emphasis in original).

Contrary to the law, MobileMedia's expert relied solely on GSM 04.08 to conclude that one of ordinary skill would be discouraged from using GSM 04.08 to reject second calls. Dr. Meldal relied on another informational cause, "cause 21," that can be sent with a call clearing

message (such as a RELEASE COMPLETE).[11] Dr. Meldal opined that because cause 21 is "only sent" with a call clearing message when "a mobile phone is not busy," *i.e.*, not already on a call, one of ordinary skill would have been "discouraged" from using GSM 04.08 to reject a second incoming call. Opp. at 79-80. Dr. Meldal's conclusory testimony fails to overcome the evidence of motivation to combine for at least three reasons.

First, MobileMedia provided no evidence that one of ordinary skill would be discouraged from using GSM 04.08 to release an incoming second call after reviewing GSM 04.83's instruction that the mobile station and network "shall act in accordance with TS GSM 04.08" for the "release of the waiting call." A57585 §1.3.1. Nor did MobileMedia present evidence refuting that one of ordinary skill would find the referenced "clearing messages" in GSM 04.08. A57585 § 1.3.1; A20185-87 (1107:9-1109:6); A20230 (1152:8-20); A19941 (863:15-25). The

[11] GSM teaches that cause information has no impact on the base station's use of the RELEASE COMPLETE message. A57272 §5.4.2 ("A call control entity shall accept an incoming RELEASE COMPLETE message used to initiate the call clearing even though the cause information is not included.")

invalidity judgment does not depend on the order of review of GSM 04.83 and GSM 04.08. Opp. at 80-81.[12] Instead, the district court properly held that one of ordinary skill must consider both references, rather than reviewing GSM 04.08 first and hitting a "dead end," as MobileMedia's expert suggested. A26, 29.

Second, Dr. Meldal's testimony does not support that GSM 04.08 "teaches away" from combination with GSM 04.83, because Dr. Meldal ignored GSM 04.08's other teachings. Contrary to Dr. Meldal's suggestion, GSM 04.08 does not teach that call clearing messages are "only sent" when a mobile phone "is not busy." GSM 04.08 expressly teaches that call clearing messages also may be sent when a mobile phone ***is*** busy. A57262-63 §§5.2.2.3.1, 5.2.2.3.2. Thus, crediting Dr. Meldal's testimony would at best support that there is more than one alternative in GSM 04.08. *See In re Fulton*, 391 F.3d 1195, 1201 (Fed.

---

[12] MobileMedia incorrectly suggests that no evidence was presented of starting with GSM 04.83 and following its instruction to use GSM 04.08. Opp. at 80-81. Apple's expert started with GSM 04.83, and explained how to follow its instruction to use GSM 04.08's messages to reject a second incoming call. A20171-92 (1093:5-1114:12); A20238-40 (1160:14-1162:5).

Cir. 2004) ("mere disclosure of more than one alternative does not constitute a teaching away from any … alternatives because such disclosure does not criticize, discredit, or otherwise discourage the solution claimed").

Third, while Dr. Meldal opined that one of ordinary skill would be "discouraged" from using GSM 04.08 to release second incoming calls, his testimony demonstrates that what he meant by "discouraged" is not "teaching away" under the law. Dr. Meldal testified that one of ordinary skill would "find no help" in GSM 04.08, that GSM 04.08 "does not actually tell us anything," and that the explanation of cause 21 "does not speak to me." A20474-76 (1396:13-22, 1398:8-13). Even if accepted as accurate, this testimony is legally insufficient to establish that GSM 04.08 "teaches away," because "silence in one reference as to what another teaches is not 'teaching away.'" *See Ex Parte Greve*, 2011 WL 1399059 (Bd. Pat. Interf. Apr. 22, 2011); *see also In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1321-22 (Fed. Cir. 2011) (affirming obviousness where all elements were present in the prior art, and distinctions between the prior art and the invention "would not lead an inventor down an errant path or discourage using

the combination"). Moreover, Dr. Meldal's testimony ignores that a person of ordinary skill is not an automaton but can use creativity to fit together his knowledge with the prior art, and implement a predictable variation. *See KSR*, 550 U.S. at 421.

#### 3. MobileMedia's Invalidity Argument Is Directly Contradicted By Its Infringement Argument

MobileMedia's expert testimony regarding invalidity also directly conflicts with his testimony on substantively identical GSM sections for infringement. For invalidity, Dr. Meldal ignored GSM 04.83's instruction and argued that one of ordinary skill would be discouraged from using GSM 04.08 to reject second incoming calls. For infringement, he testified that GSM 24.083's instruction would lead one of ordinary skill to sections of GSM 24.008, including GSM 24.008's messaging to reject second calls. A19669-74 (591:1-596:15); A20515-16 (1437:9-1438:18); *see also* A27-28. The district court properly held that MobileMedia's reliance on the GSM 24.083/GSM 24.008 combination "based on a person of ordinary skill following the instructions found in certain sections of GSM 24.083 and GSM 24.008 that had not materially changed since 1998" was inconsistent with its position that GSM 04.83

and GSM 04.08 could not have been combined using the same instructions. A28.

"The ultimate inference as to the existence of a motivation to combine references may boil down to a question of 'common sense,' appropriate for resolution on summary judgment or JMOL." *Wyers,* 616 F.3d at 1241. The district court properly held Dr. Meldal's unsupported opinion, contradicted by extensive evidence, cannot support the jury's verdict. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1342 (Fed. Cir. 2007); *see also Hoffmann-La Rouche Inc. v. Apotex Inc.*, No. 2013-1128, 2014 WL 1394948 (Fed. Cir. Apr. 11, 2014) (affirming obviousness summary judgment where plaintiff's arguments that references taught away from claimed invention did not raise genuine issue of fact). The invalidity judgment based on obviousness should be affirmed.

### C. Alternatively, The Invalidity Judgment Should Be Affirmed Because Claims 5, 6, And 10 Are Anticipated

Alternatively, this Court should affirm the invalidity judgment because GSM 04.83 and GSM 04.08 constitute a single anticipatory reference under the incorporation by reference doctrine.

Whether and to what extent a document incorporates another by reference is a matter of law. *See Advanced Display*, 212 F.3d at 1282-83. MobileMedia argues this Court ruled in *Kyocera Wireless Corp. v. International Trade Commission,* 545 F.3d 1340 (Fed. Cir. 2008), that "the GSM standard is not a single reference." Opp. at 78 n.16. But the issue in *Kyocera* was whether ***all*** parts of the GSM standard should be considered a single document simply because they are part of the same standard and include some cross-referencing. This Court explained, "the GSM standard includes hundreds of individual specifications" with "separate dates of creation." 545 F.3d at 1351.

Apple does not contend the entire GSM standard is a single document. Instead, Apple relies on two GSM sections, from the same phase with the same dates of creation, where GSM 04.83 incorporates GSM 04.08 by reference, refers to GSM 04.08 sixteen times, and specifically requires that GSM 04.08 "shall" be used to release second incoming calls, using call "clearing messages" readily found in GSM 04.08. A57169, A57575, A57581-82, A57583-85, A20238-40 (1160:14-1162:5); A20520 (1442:10-23); A20522 (1444:10-16). The drafters of GSM 04.83 clearly intended for one of ordinary skill to consider GSM

04.08's call handling procedures and clearing messages as if they were explicitly repeated in GSM 04.83. *See Advanced Display*, 212 F.3d at 1282-83. Because GSM 04.83 and GSM 04.08 should properly be considered a single anticipatory reference and it is undisputed the combination discloses all limitations of the asserted claims, the invalidity judgment should be affirmed.

## II. '231 Patent

### A. The District Court Correctly Construed "To Change A Volume"

The district court properly construed the claim term "to change a volume" to mean "to alter the degree of loudness of the alert sound." This construction is consistent with the term's customary and ordinary meaning and the intrinsic and extrinsic evidence. MobileMedia argues that "to change a volume" must be construed to include stopping playback of the alert sound. MobileMedia fails, however, to provide any legal basis for such a broad construction and, in fact, does not even propose an alternative construction that captures this scope. MobileMedia argues only that the district court's construction "excludes" the subject matter of dependent claim 2. Because MobileMedia's argument relies on a misapplication of the law and a

failure to read the claims as they are written, this Court should reject the argument, as did the district court.

#### 1. The District Court's Construction Is Consistent With Customary And Ordinary Meaning And Is Supported By The Intrinsic And Extrinsic Evidence

The district court's construction of "to change a volume" is consistent with the term's customary and ordinary meaning, which serves as the "objective baseline" and "starting point" for claim construction under *Phillips*. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-16 (Fed. Cir. 2005) (the meaning of a non-technical term is often "readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words"). While MobileMedia disputes the district court's formulation of the plain meaning, it has never disagreed that plain meaning applies. In its opening claim construction brief, MobileMedia argued the term did not require construction because it "would be readily understood by a jury." A2100.

The district court's construction correctly captures the term's customary and ordinary meaning as reflected in general purpose dictionaries. *Phillips,* 415 F.3d at 1314; *see Cat Tech LLC v.*

*TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008). "Change" means "to cause to be different" or "to exchange for or replace with another, usually of the same kind or category." A210-11 (quoting *American Heritage Dictionary of the English Language* (4th ed. 2000)). When the verb ***change*** is used in its transitive sense with the direct object ***volume***, "the ordinary meaning of the term is that the volume becomes different or is replaced by another volume level." A211; *see also* A5522-25, *Webster's Third New Int'l Dictionary* at 2563; *Volume Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/volume (last visited May 9, 2014) (defining "volume" as "the amount of sound that is produced by a television, radio, stereo, etc.; a knob, lever, etc., that controls the amount of sound something makes; an amount of something").

The intrinsic evidence also supports the district court's construction. The specification never suggests the patentee sought to redefine the term through express lexicography or disavowal, the only two methods of overcoming a term's customary and ordinary meaning. *Thorner*, 669 F.3d at 1366. Nor does the specification suggest the term has a different customary and ordinary meaning as used in the context

of the patent. As MobileMedia concedes, the specification never uses the term "to change a volume" at all. Instead, it repeatedly, consistently, and exclusively refers to the two preferred embodiments separately as the "alert sound stopping function" and the "volume reducing function"; it never uses the term "volume" in conjunction with stopping the sound. *See* A57697-98 (4:37-47, 4:67-5:4, 5:7-8, 5:13-14).

Finally, the district court's construction is supported by the extrinsic evidence. As Apple's user interface expert explained, "changing the volume of a ringtone modifies a characteristic of the playback of the signal. Persons of ordinary skill in the art understand a change in volume to mean that playback continues at a changed volume." A6024-28. The testimony of '231 Patent co-inventor Morihiko Hayashi supports the construction. When asked if stopping the alert sound was "one type of changing the volume of the generator alert sound," the inventor responded: "To be precise about it, it is not." A5888 (119:3-120:9). The inventor explained that "volume" connotes altering the sound "in a linear manner," and "completely shutting it off is not to reduce the volume in a linear matter." *Id.*

### 2. The District Court's Construction Is Proper In Light Of The Dependent Claim Limitations

MobileMedia argues that because claim 2 depends from claim 12 and adds the limitation "wherein said control means controls the state of said alert sound generator to stop the sound," the term "to change a volume" in claim 12 must encompass stopping the sound. The Court should reject this argument, as did the district court, because it mischaracterizes the express claim language and misapplies claim differentiation jurisprudence.

MobileMedia begins with the premise that the district court's construction "excludes the subject matter of dependent claim 2 from its parent claim 12," *i.e.*, "that stopping playback of an alert sound is outside the scope of claim 12, but within the scope of claim 2, which depends from claim 12." Opp. at 84-88. This premise is incorrect. Claim 12 requires that the "control means controls said alert sound generator to change a volume of the generated alert sound." Because claim 2 depends from claim 12, claim 2 adds the limitation that the control means control the state of the alert sound generator to stop the sound, which the district court construed to mean "stop the sound that is being generated without cutting off the telephone circuit." A114-15.

Claim 2, thus, adds a separate limitation and is properly narrower than claim 12. 35 U.S.C. § 112(d). The district court granted summary judgment of non-infringement of independent claim 12 and dependent claims 2, 3, and 4 because the accused iPhones did not practice claim 12's "change a volume" limitation. A117.

MobileMedia argues that claim 2's "stop the sound" limitation is a further limitation on claim 12's "change the volume" limitation—that "stop[ping] the sound" is a particular species of "chang[ing] a volume." Opp. at 87. But the claim language does not support this contention because claim 2 never ties the additional "stop the sound" limitation to claim 12's "to change a volume" limitation. Despite MobileMedia's attempt to characterize it as if it did, claim 2 does not state "said control means controls the state of said alert sound generator by said changing of a volume of the generated alert sound by ~~to~~ stopping the sound." A57703 (added language underlined, removed language struck through).

Moreover, nothing in the specification suggests the patentee intended "to change a volume" to include or to be effectuated by stopping the playback of an alert sound. As MobileMedia concedes, the

specification never uses the term "to change a volume" to refer to both reducing the volume and stopping the alert sound. Nor does the district court's construction exclude the dependent claim's additional limitation because "changing a volume" and "stopping the sound" are not mutually exclusive. For example, a device might practice both claims 12 and 2 by slowly cutting off the sound—dialing down the audio level to alter the degree of loudness, as required by claim 12, and then stopping the generation of the sound, as required by claim 2.

In *Zircon Corp. v. Stanley Black & Decker, Inc.*, 452 F. App'x 966 (Fed. Cir. 2011), this Court addressed a similar situation and reached the same conclusion as did the district court. In *Zircon*, the patentee claimed a device to locate wood or metal studs behind drywall using two capacitive sensors. *Id.* at 976. One embodiment ***computed*** a ratio of the two capacitances by ***dividing*** one by the other; the other ***compared*** the two capacitances by ***subtracting*** one from the other. *Id.* at 969. Independent claim 10 recited "***computing a ratio*** of the first and second capacitances," whereas dependent claim 19 recited that claim 10's computing a ratio "is performed by ***comparing*** the first and second capacitances." *Id.* at 969 (emphasis added). Because the

defendant's products utilized the comparing method only, the district court granted summary judgment of non-infringement. This Court rejected plaintiff's argument that "computing a ratio" in claim 10 must be construed to include the comparing method recited in the dependent claim 19, and found the dependent claim's "comparing" limitation must be ***in addition*** to its parent claim's "computing" limitation." *Id.* at 975-76. This construction was correct because "the specification [did] not interchangeably use the term 'ratio' to describe the results of both the division [i.e., computing a ratio] and subtraction [i.e., comparing] operations." *Id.*

MobileMedia appears to argue the claim differentiation doctrine supports its contention that claim 2's "stop the sound" limitation compels a broader construction of claim 12's "to change a volume" limitation. It does not. This Court has frequently stressed this doctrine's limited applicability, noting that while "dependent claims can aid in interpreting the scope of claims from which they depend, they are only an aid to interpretation and are not conclusive. ***The dependent claim tail cannot wag the independent claim dog***." *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993)

(emphasis added). Claim differentiation cannot "broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence." *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998).

The clear language of the claims and specification support the court's construction of "to change a volume." MobileMedia's argument, by contrast, would require this Court to redraft the claim language, which the district court properly rejected, noting: "The court will not essentially redraft the claim language when the patentee had two opportunities to do so." A212.

### B. The Non-Infringement Judgment Should Be Affirmed Because The Accused Products Do Not "Change A Volume Of The Alert Sound"

The iPhone does not practice the "to change a volume" limitation of independent claim 12 of the '231 Patent, the only asserted independent claim. It is undisputed that the iPhone does not provide control means to "reduce, increase, mute, or otherwise change the volume" of an audio ringtone file while it is being played, let alone "alter the degree of loudness of the alert sound that is being generated without cutting off the telephone circuit." A116. Rather, the iPhone

permits the user to stop the playback of the audio ringtone file by pressing the iPhone's On/Off Sleep/Wake button. *Id*. The district court properly rejected MobileMedia's attempt to equate stopping the playback of an audio ringtone file with changing the volume of an alert sound, noting that this argument errs by focusing on the "auditory result" of the claimed means of controlling the alert sound rather than the means themselves. The district court explained that the difference between changing the volume of an alert sound and stopping the playback of the alert sound

> is analogous to muting a compact disc ("CD") that is still playing and stopping the CD completely; although the auditory result is the same, the control is different. The claims do not refer to the user's perception of the claimed function but instead claim a component to control a characteristic of the sound.

A116-17.

For these reasons, the Court should affirm the district court's non-infringement judgment for claims 2, 3, 4, and 12 of the '231 Patent.

## CONCLUSION

For the foregoing reasons, this Court should affirm the non-infringement and invalidity judgments of the ’075 Patent and the non-infringement judgment of the ’231 Patent.

Date: May 13, 2014

/s/ *Luann L. Simmons*
Luann L. Simmons
of O’Melveny & Myers LLP

## CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellant Apple Inc. certifies:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 13,787 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Word 2010 in 14-point Century Schoolbook.

Date: May 13, 2014

Respectfully submitted,

By: /s/ *Luann L. Simmons*
Luann L. Simmons

**CERTIFICATE OF SERVICE AND FILING**

I certify that on May 13, 2014, I electronically filed the foregoing, CORRECTED RESPONSE AND REPLY BRIEF OF DEFENDANT-APPELLANT APPLE INC., using the Court's CM/ECF filing system, thereby serving opposing counsel pursuant to Fed. Cir. Rule 25(a) and ECF-2(d) of the Court's May 17, 2012 Administrative Order Regarding Electronic Case Filing.

Date: May 13, 2014

/s/ *Luann L. Simmons*
Luann L. Simmons
of O'Melveny & Myers LLP