**Nos. 14-1060, 14-1091**

# United States Court of Appeals
*for the*
# Federal Circuit

MOBILEMEDIA IDEAS LLC,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

APPLE INC.,

*Defendant-Appellant, Cross-Appellee.*

**Appeal from the United States District Court for the District of Delaware in Case No. 10-CV-258, Judge Sue L. Robinson**

## REPLY BRIEF OF PLAINTIFF-APPELLEE, CROSS-APPELLANT

Steven M. Bauer
Justin J. Daniels
Safraz W. Ishmael
John E. Roberts
John M. Kitchura, Jr.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Telephone: 617-526-9600

*Counsel for Plaintiff-Appellee, Cross-Appellant MobileMedia Ideas LLC*

June 2, 2014

# TABLE OF ABBREVIATIONS

MobileMedia adopts the Appellant's Abbreviations. Additional abbreviations used herein include:

| | |
|---|---|
| '231 Patent | U.S. Reissued Patent No. RE 39,231. A57690-706. |
| GSM 04.08 | European digital cellular telecommunications system (Phase 2); Mobile radio interface layer 3 specification (GSM 04.08). A57169-574. |
| GSM 04.83 | European digital cellular telecommunications system (Phase 2); Call Waiting (CW) and Call Hold (HOLD) supplementary services-Stage 3 (GSM 04.83). A57575-94. |
| POSITA | Person of ordinary skill in the art |

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiff-Appellee, Cross-Appellant MobileMedia Ideas LLC certifies the following:

1. The full name of every party or amicus curiae represented by me is: MobileMedia Ideas LLC.

2. The name of the real party in interest represented by me is: MobileMedia Ideas LLC.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: MPEG LA, LLC, Nokia Corporation, and Sony Corporation of America.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   <u>Proskauer Rose LLP</u> - Steven M. Bauer, Anthony C. Coles, Justin J. Daniels, Alan Federbush, Safraz W. Ishmael, John M. Kitchura, Jr., Timothy W. Mungovan, John E. Roberts, Kenneth Rubenstein, Elias Schilowitz, John C. Stellabotte.

   <u>Morris, Nichols, Arsht & Tunnell LLP</u> - Jack B. Blumenfeld, Rodger Dallery Smith, II, Jeremy A. Tigan.

   <u>Quinn Emanuel Urquhart & Sullivan LLP</u> (firm withdrawn as of March 30, 2012) - Edward J. DeFranco, Kevin P.B. Johnson, Alexander Rudis, Matthew Traupman.

Young, Conaway, Stargatt & Taylor, LLP (firm withdrawn as of February 9, 2012) - Adam Wyatt Poff, Michele Sherretta Budicak, Pilar Gabrielle Kraman.

Shaw Keller LLP (firm withdrawn as of February 9, 2012) - John W. Shaw.

Sullivan & Cromwell LLP (firm withdrawn as of March 29, 2012) - Garrard R. Beeney, Adam R. Brebner, Victoria A. Coyle, Marc De Leeuw, David Dehoney, Taly Dvorkis, Diana Iskelov, Jane J. Jaang.

Case: 14-1060 Document: 42 Page: 5 Filed: 06/02/2014

# TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ..... i

CERTIFICATE OF INTEREST ..... ii

TABLE OF CONTENTS ..... iv

TABLE OF AUTHORITIES ..... vi

ARGUMENT ..... 1

I. The ’075 (“Call Rejection”) Patent: The District Court Should Not Have Overturned The Verdict Of Infringement And Validity ..... 1

A. On Infringement, The District Court Improperly Adopted Apple’s View Of Contested Facts ..... 1

B. On Validity, The Invention Was Beyond The Capability Of A POSITA In 1998 ..... 8

1. Obviousness ..... 12

2. Anticipation ..... 20

II. The ’231 (“Call Alerts”) Patent: The District Court’s Summary Judgment Of Non-Infringement Should Be Vacated ..... 22

A. The Claim Term “To Change A Volume” Necessarily Encompasses “Stop[ping]” The Sound ..... 23

Case: 14-1060 Document: 42 Page: 6 Filed: 06/02/2014

B. The District Court Erred By Confusing The Electronic Signal Which *Generates* The Alert Sound, With The Alert Sound Itself ........ 23

C. Unlike Apple's Construction, MobileMedia's Construction Is Internally Consistent With The Specification And The Claims ........ 26

CONCLUSION ........ 31

Case: 14-1060 Document: 42 Page: 7 Filed: 06/02/2014

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
616 F.3d 1283 (Fed. Cir. 2010) ....... 29

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) ....... 20

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) ....... 9

*Edwards Lifesciences AG v. CoreValve, Inc.*,
699 F.3d 1305 (Fed. Cir. 2012) ....... 1

*Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*,
346 F.3d 1051 (Fed. Cir. 2003) ....... 22

*Eli Lilly & Co. v. Teva Pharm. USA, Inc.*,
619 F.3d 1329 (Fed. Cir. 2010) ....... 11

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
496 F.3d 1334 (Fed. Cir. 2007) ....... 4

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007) ....... 10, 11

*Kyocera Wireless Corp. v. ITC*,
545 F.3d 1340 (Fed. Cir. 2008) ....... 21

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993) ....... 1

*Vitronics Corp. v. Conceptronic Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ....... 29

*Zircon Corp. v. Stanley Black & Decker, Inc.*,
452 Fed. Appx. 966 (Fed. Cir. 2011) ....... 26, 27

**STATUTES**

35 U.S.C. § 112(d) .......... 26

**OTHER AUTHORITIES**

Federal Rule of Appellate Procedure 28.1(e)(2)(C) .......... 32

Federal Rule of Appellate Procedure 32(a) .......... 32

Merriam-Webster.com, http://www.meriam-webster.com/dictionary/sound (last visited May 19, 2014) .......... 24

Case: 14-1060 Document: 42 Page: 9 Filed: 06/02/2014

# ARGUMENT

## I. The '075 ("Call Rejection") Patent: The District Court Should Not Have Overturned The Verdict Of Infringement And Validity

### A. On Infringement, The District Court Improperly Adopted Apple's View Of Contested Facts

The jury found infringement after MobileMedia's expert testified that the claims were literally infringed, and explained why.

It is black letter law that "'[i]n determining whether the evidence at trial was sufficient to sustain the verdict, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.'" *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1313 (Fed. Cir. 2012) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). On Apple's motion, the district court erred when it reversed the jury finding, holding that there was insufficient evidence for a finding of infringement as to one claim limitation, namely the term:

> … wherein said rejection message comprises at least one information element indicating to the wireless system that the wireless system is to immediately release the incoming call on the communication channel between the mobile communications device and remote transceiver.

A43471(1:39-44); *see also* A43467(12:30-35) (claim 5).

Quite simply, the district court was wrong to reverse, on the grounds urged by Apple, that MobileMedia did not submit sufficient evidence to the jury that the DISCONNECT message (which was the "said rejection message") included "at least one information element indicating" that the wireless system was immediately to release the call. A33-34; Apple-Resp. 56-59. It was wrong because, in fact, there *was* significant and substantial evidence on this exact issue. MobileMedia's expert, Dr. Meldal, had testified to this very point:

> So we're in the – we're talking about the accused iPhones, so we're in the context of GSM standard. So that the – the disconnect request has information in it such that the wireless system will immediately release incoming call on communication channel, et cetera. And it does. *It not only says disconnect, which you would think would be sufficient, but it gives a specific cause.* So the disconnect, again going back to the standard … And if I can turn you to page 90050. And let me blow up Section 1.3 at the bottom of the page.

### 1.3.1 Waiting call released by subscriber B

For the release of the waiting call the mobile station and the network shall act in accordance with 3GPP TS 24.008. The transaction identifier shall be the transaction identifier (C-B) of the waiting call.

* If the B subscriber indicates UDUB by the sending of the first clearing message with cause information element #17 (User Busy), and call forwarding on mobile subscriber busy is activated for the B subscriber the call shall be forwarded by the network. If call forwarding is not active the call will be cleared.
* If any other causes are given in the first clearing message the call will be released.

> And this is, again, technical terms. It talks about an unsuccessful outcome, which is technical speak for rejecting a call. Sometimes that would be successful, but anyway it's

Case: 14-1060 Document: 42 Page: 11 Filed: 06/02/2014

> an unsuccessful outcome, and it is a waiting call released by subscriber B, which is the recipient.
>
> And you will see in the first period there, if you can blow it up. Thank you. It says the – if subscriber B, that would be the user, indicates UDUB, which is user defined – user declined, user defined, user busy. In other words, I don't want to pick up the phone. It sends out a clearing message and it gives the call as No. 17. *That's the information element* that we learned to touch on, that the user is busy. *That's the information. It tells the network why, or what the message is. And then it says, if you go up to here, it says, how to handle this is defined in 24 008.* That's on the first paragraph in Section 1.3.1.
>
> If you can highlight this, please. 24 008. That is the other technical standard that we're going to look at briefly, I assure you. So 24 008, it says, here's how we're actually going to do this. We'll indicate that we're busy. That's the standard. And then we're going to handle it …

A19666(588:14-23), A19669-70(591:12-592:11) (referencing A56250 (§1.3.1)) (emphasis added).

Meldal then went on to discuss specific portions of the GSM standard, including Section 5.4.3.5, which describes how, upon receiving the DISCONNECT message containing the "cause information element #17 (User Busy)," the cell tower starts the T308 timer, and how that timer expires twice, the second call is released. A19770(692:1-4) ("The timer is always starting and the cell tower will wait for a handshake, and if it does not get the handshake and the time expires twice, then it

Case: 14-1060 Document: 42 Page: 12 Filed: 06/02/2014

cakes [*sic*] the connection down."); *see also* A19669-74(591:1-596:20); A56455-56(§§5.4.3.2 and 5.4.3.5); A56250(§1.3.1); A56439(§5.2.2.3.4); A56455-61(§5.4.3).[1]

Apple's expert, Dr. Akl, on the other hand, provided no rebuttal to this evidence. MobileMedia's Dr. Meldal testified that when the cell tower receives the DISCONNECT message, the wireless system starts a timer (T308) which, with no intervening activity, causes the second call to be released after the timer expires twice. A19660-81(582:14-596:24, 597:2-603:23); A56455-56(§§5.4.3.2 & 5.4.3.5). Likewise, Apple's Dr. Akl conceded that under *any* possible scenario, once the DISCONNECT message was sent, there would *always* be a disconnect – that is, the DISCONNECT message *alone* has all the information necessary to drive the wireless system to disconnect the call *without requiring* any additional communication from the mobile phone. A20206-07(1128:23-1129:5); A20209-11(1131:6-1133:2); A20212(1134:12-15). In other words, the fact that the mobile phone in many scenarios may send additional

[1] The district court's and Apple's reliance on *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334 (Fed. Cir. 2007), for the proposition that conclusory expert testimony cannot support a jury's verdict, is unjustified. In that case, plaintiff's expert's opinion was discredited because it was *contrary to law* – specifically, the FDA's "safe harbor" rules. *Id.* at 1341-42. Here, Meldal gave factual, *unrebutted* testimony on the specific claim limitation at issue.

Case: 14-1060 Document: 42 Page: 13 Filed: 06/03/2014

messages to the cell tower (such as the RELEASE COMPLETE message that Apple cites), does not negate the fact that these additional messages are *not required* to release the call at the cell tower. The RELEASE COMPLETE message may accelerate the call release process in some scenarios; however, if the cell tower does not receive the RELEASE COMPLETE message it will nevertheless release the call upon the second expiry of the T308 timer that is started when the cell tower first receives the DISCONNECT message.[2]

Given Dr. Meldal's testimony – which for purposes of this appeal must be accepted as fact – it was wrong for the district court to find in favor of Apple on this issue.

The district court erred here when it adopted the facts as Apple would have them, rather than as they were presented to the jury. Here on appeal, Apple reargues the same technical case the jury rejected,

---

[2] Apple's brief suggests that MobileMedia based its case on an "abnormal" case in the particular GSM standard that the iPhone practices. Apple-Resp. 42-43. But what Apple misses is that MobileMedia merely used the "abnormal" case to make the point that the DISCONNECT message alone has all the information required to release the call at the cell tower. In the "abnormal" case, where the RELEASE COMPLETE message is never received at the cell tower, the cell tower will release the call anyway after the expiry of the T308 timer that is set when the cell tower initially received the DISCONNECT message.

Case: 14-1060 Document: 42 Page: 14 Filed: 06/02/2014

namely that the DISCONNECT message itself does not contain the "information element" because intervening messages are sent from the base station after the DISCONNECT message is received from the mobile device. Apple-Resp. 57-58. For example, Apple argues that Meldal's statement of the facts was wrong, saying that "cause 17 merely indicates 'user busy'" and "can be sent with the DISCONNECT message in the 'normal' scenario in which the base station releases the call on after receiving more messages from the mobile phone." Apple-Resp. 58-59. But the only *evidence* Apple offers to "prove" this are four pages (about the CALL CONFIRMED message) buried in more than 500-pages of technical standards documents that no one testified about at trial (*see* Apple-Resp. 59 (citing A56437-38 & 248-49)), and two sentences from *Dr. Meldal's* testimony which, when viewed in the context of his entire testimony, in fact prove *MobileMedia's* case. The two Meldal sentences that Apple cites but does not quote, are as follows:

> Those are the two scenarios, *both of which*, once the disconnect message has been sent from the iPhone, it *is sufficient to cause the connection to be released*. And the information element you talked about is in the message indicating to the cell tower that it is because of call 17 user visit.

A19674(596:10-15) (emphasis added). Meldal is testifying that under *either* scenario, there *is* information in the signal which causes the connection to be released. The jury was entitled to weigh Dr. Meldal's testimony and accept it as true. And the district court was obligated to do the same once the jury found in MobileMedia's favor.

Perhaps recognizing that the factual evidence weighs heavily against it, Apple asks this Court to find that the claim term "information element" must contain a specific, affirmative code for immediately releasing the call. However, this argument was expressly rejected in the district court's claim construction order – a construction that Apple does not challenge on appeal:

> To the extent Apple argues that MobileMedia had to show that cause 17 "affirmatively indicates" to the wireless system that it must release the incoming call, the use of "affirmatively" is an improper modification of the court's construction. (*See* D.I. 518 at 10) The word "affirmatively" is not part of the court's construction.

A33 n.7.

Importantly, the district court construed the claim term "immediately release" to have no temporal restrictions – it only required that "the wireless system must, without requiring any additional action by or communication *from the mobile phone*, 'release

Case: 14-1060 Document: 42 Page: 16 Filed: 06/02/2014

the incoming call on the communication channel between the mobile phone and remote transceiver.'" A101-02; A18585; A19659-60(581:16-582:13); A20210(1132:2-10). Because the "cause information element #17 (User Busy)" data element in the DISCONNECT message tells the cell tower to start the T308 timer, which will then cause the release of the second call after expiring twice (A56250(§1.3.1); A56455-56(§§5.4.3.2 and 5.4.3.5)), Apple's argument that the information contained in the DISCONNECT message does not meet this claim element is technically wrong.[3] More importantly, the jury heard it all, and rejected this technical argument at trial.

### B. On Validity, The Invention Was Beyond The Capability Of A POSITA In 1998

At trial, Apple's expert testified that the skill level of a POSITA at the time of the invention was "somebody with a Bachelor's degree in

[3] If the DISCONNECT message was insufficient to release the call without requiring additional communication from the mobile phone (as Apple seems to argue), then cell towers that permanently lost communication with cell phones after receiving the DISCONNECT message but before receiving the RELEASE COMPLETE message would be tied up for an infinite amount of time, endlessly waiting for a RELEASE COMPLETE to be received from the phone. A19661(583:10-21). Such is not the design of the iPhone or the GSM system it uses. As Meldal testified, the DISCONNECT message alone is sufficient to release the call without requiring additional communication from the mobile phone. A19895(817:3-14).

Case: 14-1060 Document: 42 Page: 17 Filed: 06/02/2014

computer science or computer engineering or electrical engineering, a related field, with two years of experience in telecommunications." A20173(1095:7-13).[4]

After trial (and here), Apple argued as though the POSITA would have been an expert in the field and more knowledgeable than an engineer who was only two years out of college. The district court then fell into the trap to which Apple led it, re-reading the prior art from the point of view of an expert far more advanced than the POSITA whom the jury heard about. The district court in effect gave Apple a new "bench" trial on the validity issue, looking at the prior art from the point of view of a *highly* skilled expert in the field, rather than from the viewpoint of a POSITA with two years of experience.

The low skill level of the POSITA is important in this case because "[t]he question is not whether the combination was obvious to the

---

4 Apple's decision to argue for such a low skill level for the POSITA was no mistake – it was a strategic choice to protect its arguments at the district court that the '075 Patent was invalid for lack of written description and/or indefiniteness. A low skill level for a POSITA favored such arguments, as the written description requirement requires that the specification convey with reasonable clarity to a POSITA that the inventor had possession of the invention. *See Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1355 (Fed. Cir. 2010).

Case: 14-1060 Document: 42 Page: 18 Filed: 06/02/2014

patentee but whether the combination was obvious to a person with ordinary skill in the art." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 420 (2007). MobileMedia's expert explained to the jury that a POSITA in 1998 who was then only two years out of college, would have had too little experience or knowledge in this difficult field to arrive at the complex inventions claimed in the patent, *even with* the GSM 4.08, GSM 4.83, and '068 Patent references all before him or her. Meldal explained to the jury, convincingly, that the two-year experienced POSITA in fact would have been guided *away* from the invention by the dead end description and definition of "Cause No. 21 'call rejected'" found in the GSM 4.08 document. A20473-78(1395:15-1400:5);A57560.

Apple's expert, on the other hand, said *nothing* in rebuttal to Meldal's "Cause No. 21" argument, even though he had ample opportunity. Given Meldal's testimony, and Akl's non-rebuttal, it is no surprise that the jury credited Meldal's testimony on the facts going to non-obviousness. So should have the district court.

In its response brief here, Apple ignores the level of skill accorded to a POSITA. Completely absent from Apple's brief is any foundation

for its speculation that a POSITA with two years of experience would have been able to make this invention or would have found it obvious.

This is analogous to the arguments defendant made in *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 619 F.3d 1329 (Fed. Cir. 2010), where defendant Teva argued that the invention was obvious because Lilly's scientists would have had a basis to believe that the invention would work. But this Court warned against arguments conflating people of high skill in the art with those of *ordinary* skill in the art: "[T]he record will not allow this court to conflate Lilly scientists with those of ordinary skill in the art … *The Lilly researchers had both knowledge and credentials superior to the ordinary artisan.*" *Id.* at 1340 (citing *KSR*) (emphasis added). Here Apple does the same, making arguments from the point of view of its expert, Akl, who holds a Doctor in Science degree in Electrical Engineering, with years of research and industry experience. A20128-38(1050:8-1060:24).

Finally, it must be noted that much of Apple's post-trial argument to the district court was never presented to the jury, even though Apple had the burden of proof on invalidity. A jury trial is not merely an evidentiary hearing to put prior art in the record for reargument later

Case: 14-1060 Document: 42 Page: 20 Filed: 06/02/2014

to the bench. Apple needs to show here that the *jury* had no substantial evidence upon which to reach its verdict. Lawyer arguments to the bench or appeals court cannot overcome the trial evidence that sank Apple's obviousness case, particularly when the issue was so clearly dependent on the jury's assessment of the relative credibility of the parties' experts.

**1. Obviousness**

Attacking the jury's finding on the technical merits of the patent, Apple first argues that it was fair for the district court to reject the jury's finding because the named inventors said in the initial provisional application that "GSM has a feature like this." Apple-Resp. 45. Apple made the same argument to the jury, but has not told *this* Court that the jury *also* heard that the statement was not probative of anything, let alone invalidity, because there was nothing linking the "feature like this" to the claimed invention, as opposed to any of a number of different call features described in the application, and not claimed as an invention. Indeed, *at trial*, Apple's expert conceded this important point:

> Q. So what you showed the jury was, has the invention been used or made publicly available before now? And

Case: 14-1060 Document: 42 Page: 21 Filed: 06/02/2014

> the inventor of [the '075 patent said] GSM has a feature like this; right?
>
> A. Yes.
>
> Q. He didn't tell you what part of GSM?
>
> A. Yes.
>
> Q. And he didn't tell you it is a GSM 4.08 or 4.83, or any one of those other hundreds of phones; right?
>
> A. Yes.
>
> Q. And it just uses the word feature. It does not tell you what the word feature is?
>
> A. Okay.
>
> Q. Right? He doesn't tell you what the feature is. And you are inferring from that that the inventor believed GSM made this invention before?
>
> A. Yes.

A20218(1140:4-19). There simply is no evidence that the inventors were referring to the *claimed* invention here.

Second, Apple argues it was fair for the district court to reject the jury's finding because, Apple argues, the Examiner in the re-examination did not consider the call waiting features shown in GSM 04.83 (Call Waiting) and in MobileMedia's '068 Patent. Apple-Resp. 45. Apple made the same argument to the jury, but has not told *this* Court

Case: 14-1060 Document: 42 Page: 22 Filed: 06/02/2014

that the jury *also* heard Apple's expert's concession that the patentee *had*, in fact, pointed out these very features in the *background* section of the '075 Patent, and that the Examiner in fact did know about call waiting:

> Q. And, sir, the Examiner in the re-examination knew about call waiting; right?
>
> A. Yes.
>
> Q. And no question, the Examiner knew call waiting. They put it right in the patent. Call waiting exists and it's a problem in terms of how to reject it; right?
>
> A. Yes.
>
> Q. And the 4.83 standard that you said wasn't in front of the Examiner, that was just a standard relating to call waiting.
>
> A. Yes.

A20221(1143:1-11). In fact, the '075 patent *expressly* discloses call waiting as prior art and introduces the invention in that context:

> Mobile phone systems have also adopted some of the features available in landline systems. For instance, *a call-waiting feature may be implemented in a mobile phone system*. During operation of call waiting, a user of a mobile phone may be connected and in active communication with a first caller when a second caller attempts a call to the same mobile phone. Instead of the second caller getting an immediate busy signal, a ringing cycle occurs where the mobile phone user receives a call alert indicating that there

Case: 14-1060 Document: 42 Page: 23 Filed: 06/02/2014

> is an incoming call. The mobile phone user may then switch over to the second call and put the first call on hold, or may ignore the second call and continue on the first call. If the second call is not answered, the call alert to the mobile phone user will continue for a time period defining the ringing cycle. *Unless the mobile phone user answers the second call, there is currently no way to terminate the call alert until the ringing cycle is complete.*

A43462-63(col. 2, l. 54 – col.3, l. 3) (emphasis added).

Third, Apple argues that it was fair for the district court to reject the jury's finding because, Apple argues, the '068 Patent teaches rejecting a second incoming call. Apple-Resp. 47. Apple made the same argument to the jury, but has not told *this* Court that Apple's evidentiary citations refer to a disclosure directed to the user *interface* of a cellular phone not *how* to reject the second incoming call. The '068 Patent does not describe the circuitry for performing such functions, particularly as required by at least asserted claim 10. Apple cites the background section of the '068 Patent for a proposition that "the call control functionality may be performed using 'a standard in the GSM system.'" Apple-Resp. 47. But there is no information in the background section about *which* standard might show this, and Apple never referred the jury to any such operational GSM system. In short, there is no reference in the '068 Patent to the prior art documents that

Case: 14-1060 Document: 42 Page: 24 Filed: 06/02/2014

Apple relies on (GSM 04.08 or 4.83), and there is no disclosure in the ’068 Patent as to *how* to reject *any* incoming call, let alone a second incoming call.[5]

Fourth, Apple argues that it was fair for the district court to overturn the jury verdict because, Apple argues, MobileMedia’s expert supposedly ignored GSM 4.83 and simply relied on GSM 4.08. Apple-Resp. 48. Again, that is factually wrong. Meldal testified that he considered *both* GSM references in connection with his conclusion that, to a POSITA in 1998, the invention would not have been obvious:

> Q. And can you address why *combining those two [Sudo ’068 patent and GSM 4.83] with 4.08* wouldn’t have suddenly made it obvious if 4.08 alone wasn’t making it obvious?
>
> A. The – well, again, we go back to the person of ordinary skill in the art. And we have seen, or at least I had

[5] While the district court did say that the ’068 Patent might provide “any additional inventive leap necessary to combine GSM 4.83 and GSM 4.08,” A27, the court elsewhere contradicted that statement in noting that the question of discouragement against a combination (or teaching away from a combination) is a question of fact, and that “*[t]he jury was free to find* that GSM 04.08 *teaches away* from handling second incoming calls while connected to a first call,” A26 (emphasis added). The district court erred by assuming that one can create a path to obviousness by starting with one reference that leads to another. The testimony from Meldal assumed that the POSITA had *all* of the references before him or her, including the ’068 Patent (“Sudo”), and that this person would have been discouraged by the definition of Cause No. 21. A20481-84(1403:22-1406:5).

Case: 14-1060 Document: 42 Page: 25 Filed: 06/02/2014

> given my opinion about why a person of ordinary skill in the art would actually be looking away from 4.08 because it was about busy calls whereas 4.83 is about call waiting and call hold. That is how they handled a second call and it's what's called a supplementary service. The – so we have on the one hand one document talking about call waiting. We have another document talking about handling the first call. One of them is small, one of them is big. *And even having them side by side, it doesn't tell you anything about call waiting while on the second call …*

A20481-82(1404:1-1404:16) (emphasis added).[6] In its brief, Apple points only to its counsel's closing argument, rather than to any *evidence*. Apple-Resp. 48. In any event, starting with GSM 4.83 – as Apple urges – the jury still could have based its judgment on the fact that the reference to GSM 4.08 would lead a POSITA to combine the two disclosures, but then reach a dead end because the definition of Cause No. 21 would have discouraged any on-going activity. Although Apple says that *its* expert (Akl) testified that it would have been "trivial" to combine GSM 4.83 with 4.08 to release a call waiting call (Apple-Resp. 60), Dr. Meldal said the contrary, and Apple's expert had no response to Meldal's testimony that the Cause No. 21 disclosure in

[6] Apple cites *GPAC*, *Union Carbide*, and *Ordinance*, for the proposition that GSM 4.83 and GSM 4.08 must be considered together. MobileMedia does not dispute that references must be considered together.

Case: 14-1060 Document: 42 Page: 26 Filed: 06/02/2014

GSM 4.08 in 1998 would have confounded a POSITA such that he or she would not have been able to arrive at the invention. A20473-78(1395:15-1400:5).

Fifth, Apple argues that the district court could rightfully ignore Meldal's testimony at trial because, Apple argues, he did not consider other teachings in the GSM references when he gave his opinions, and he improperly treated the POSITA as someone with no creativity and who was an "automaton." Apple-Resp. 66. But, there is no *evidence* to support these arguments.

In fact, Meldal told the jury that he considered the entirety of both references side by side, and that it was his opinion that a POSITA in 1998 would not have been able to arrive at the invention from these references because the Cause No. 21 definition would have led such a person to a dead end. A20473-78(1395:15-1400:5);A20481-83(1403:22-1405:6). Importantly, unlike Akl, Meldal had a good understanding of what a POSITA in 1998 would have known – it fit the description of his graduate students at the time. A20473-74(1395:7-1396:5). Meldal provided his opinion that a POSITA would not have been able to arrive at the invention in 1998, even with the prior art before them. A20481-

Case: 14-1060 Document: 42 Page: 27 Filed: 06/02/2014

83(1403:22-1405:6). These are all issues of fact to which the jury was entitled to find in MobileMedia's favor.[7]

Sixth, Apple argues it was fair for the district court to reverse the jury and find the claimed invention obvious, because MobileMedia's expert relied on two later GSM standards, GSM 24.083 and GSM 24.008, to show how the iPhones work today. Apple-Resp. 66-67. As explained in MobileMedia's opening brief, however, Apple leads the Court down the wrong path, because the obviousness question is based on the knowledge of a POSITA in *1998*, while the infringement question is set in the present and is based on how the iPhone actually operates today. The fact that the world has combined the two references *today* and that the iPhone *now* operates according to the invention does not mean the invention was obvious back in 1998. That Meldal, at a jury trial in 2012, used the GSM 24.083 and GSM 24.008 references to explain the current operation of the iPhone says nothing as to whether

[7] Apple parses Meldal's testimony to try to elicit what he meant by the word "discouraged." Apple-Resp. 65. At trial, however, Apple never asked Meldal for his definition of the word "discouraged," and now all reasonable inferences must be found in favor of MobileMedia. The fact is that discouragement away from a combination is evidence of teaching away that is sufficient for a jury to find non-obviousness. Even the district court recognized that "[t]he dispute is limited to whether there was sufficient motivation to combine." A25.

Case: 14-1060 Document: 42 Page: 28 Filed: 06/03/2014

it would have been obvious to a POSITA in 1998 to *combine* the two sets of features.

### 2. Anticipation

Finally, Apple again argues that GSM 4.08 and GSM 4.83 – two different documents – should be treated as a single reference for purposes of proving the invention was "anticipated." Apple-Resp. 68.[8] Apple's argument flies in the face of the Federal Circuit's ruling on the *precise* issue of whether GSM documents that reference and expressly incorporate each other may be considered a single reference for anticipation, finding they may not:

> Qualcomm asserts that each GSM specification incorporates the others by reference. Even if true, this fact does not qualify the GSM standard as a single reference. This court has been clear that in order for one document to incorporate another document by reference, the incorporating document must identify the incorporated document with detailed particularity, clearly indicating the specific material for incorporation. *See Advanced Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1282 (Fed. Cir. 2000). At most, each relevant GSM specification identifies itself as a part of the greater GSM standard; specifications at times cross-reference other specifications. This vague referencing practice is hardly sufficient to meet this court's legal requirements for incorporation. In sum, the GSM standard

---

[8] MobileMedia moved for summary judgment on this issue, and the district court granted the motion and entered a judgment of no anticipation as to these references. A109-10. Accordingly, the issue of anticipation was never put before the jury.

Case: 14-1060 Document: 42 Page: 29 Filed: 06/02/2014

> is simply not a coherent whole document that can be assigned a single prior art date of creation.

*Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1351-52 (Fed. Cir. 2008).

Here, even though GSM 4.83 refers to "TS GSM 4.08," it does not indicate the specific material or pages for incorporation, as required under the law. As in the GSM documents in *Kyocera*, "specifications at times cross-reference other specifications," but "each specification, though part of the greater GSM standard, stands as a separate document in its own right." *Id.* at 1351-52. Moreover, as the district court reasoned in its summary judgment order:

> Here, although GSM 04.08 and 04.83 have the same February 1995 date, they have separate page numbering. Moreover, GSM 04.08 is over four hundred pages long, with only a few pages (sections 5.2.2.1 and 5.2.2.3) discussing call rejection, so the reference in GSM 04.83 to GSM 04.08 is insufficient to incorporate the latter. (See D.I. 324 at A300-02) Therefore, GSM 04.08 and GSM 04.83 stand as separate documents and do not anticipate the '075 patent.

A109-10.

Finally, even if GSM 4.08 and GSM 4.83 were to be considered a single document for anticipation purposes, such a combined document would nevertheless fail to anticipate because Meldal's testimony about Cause No. 21 would have been sufficient evidence for the jury to find that the combined documents would not have enabled a POSITA to

Case: 14-1060 Document: 42 Page: 30 Filed: 06/02/2014

build the invention. *See Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (patent claim "cannot be anticipated by a prior art reference if the allegedly anticipating disclosures cited as prior art are not enabled").

## II. The '231 ("Call Alerts") Patent: The District Court's Summary Judgment Of Non-Infringement Should Be Vacated

Turning to the '231 Patent, contrary to what Apple says in its brief, MobileMedia does not take issue here with the district court's construction of "to change a volume of the generated alert sound" (from independent claim 12) or its construction of "stop the sound" (from dependent claim 2). On this appeal, this Court can assume that "to change a volume…" means "to alter the degree of loudness of the alert sound that is being generated without cutting off the telephone circuit," and "to stop the sound" means "stop the sound that is being generated without cutting off the telephone circuit."

Rather, MobileMedia asks this Court to reverse the district court's finding that the terms "change a volume" and "alter the degree of loudness" is not broad enough to encompass the dependent claim

Case: 14-1060 Document: 42 Page: 31 Filed: 06/02/2014

limitation "stop the sound," a feature that the accused iPhones undisputedly practice.

### A. The Claim Term "To Change A Volume" Necessarily Encompasses "Stop[ping]" The Sound

Apple argues that the "customary and ordinary meaning" of "chang[ing] a volume" of a sound *necessarily* excludes "stop[ping]" the sound. Apple points to the dictionary definition of the term "change" as "cause to be different …," and the term "volume" as "the amount of sound that is produced …," such as by an iPhone speaker. Apple-Resp. 71. Apple argues that these definitions, taken together, somehow mean that "stop[ping] the sound" is not the ultimate end point for "chang[ing] a volume."

But Apple's argument makes no semantic sense. In fact, according to *Apple's* definitions, to "change a volume of the generated alert sound" means *to cause the amount of the generated sound to be different*.

### B. The District Court Erred By Confusing The Electronic Signal Which *Generates* The Alert Sound, With The Alert Sound Itself

The "alert sound generator," as MobileMedia contended below, is the speaker in the iPhone that generates the alert sound to indicate a

Case: 14-1060 Document: 42 Page: 32 Filed: 06/02/2014

phone call. Sound itself is a *physical* thing – a longitudinal vibration of pressure waves in air, generated by the speaker.[9] As described in the patent, when the playback of the alert sound is stopped, the volume (or amount) of the generated alert sound is "different," changing from an audible level to a "zero" level. In other words, the amount of sound coming from the phone ("n" vibrations in air, where "n" is greater than zero) is changed to a different amount ("zero" vibrations in air). This stopping of sound is a change in the volume of the generated alert sound (the sound that the iPhone's speaker generates from the playback of the audio file).

The district court erred when it confused the *physical* quantity of "sound" with the *electronic* signal from the central processing unit ("control means") that controls the iPhone speaker to produce the sound. This error is apparent in the "CD" analogy the court used in its claim construction decision:

---

[9] This definition is consistent with Apple's expert's testimony at his deposition. A8366(205:11-23.) The definition is also consistent with the dictionary relied on by Apple in its response brief (Apple-Resp. 71). *See* Sound Definition, Merriam-Webster.com, http://www.meriam-webster.com/dictionary/sound (last visited May 19, 2014) (defining "sound" as "mechanical radiant energy that is transmitted by longitudinal pressure waves in a material medium (as air) and is the objective cause of hearing").

Case: 14-1060 Document: 42 Page: 33 Filed: 06/03/2014

> The difference [between altering the degree of loudness and stopping the sound] is analogous to muting a compact disc ("CD") that is still playing and stopping the CD completely; *although the auditory result is the same, the control is different. The claims do not refer to the user's perception of the claimed function but instead claim a component to control a characteristic of the sound.*

A116-17 (emphasis added). Apple argues that it is error to "focus[] on the 'auditory result' of the claimed means of controlling the alert sound rather than the means themselves." Apple-Resp. 78.

The claim (and the invention) do not care whether the volume of the sound is "changed" by the CPU ("control means") *muting* the speakers while the electrical signal continues internally, or *stops* the electrical signals associate with the audio file altogether. What matters is what comes out of the speaker (*i.e.*, the vibrations in the air that the speaker generates) and whether the vibrations are changed from one amount to another amount. The "control means" does not generate the alert sound – it is the "alert sound *generator*" (the iPhone speaker) that generates the sound.[10]

---

[10] Apple's citation to inventor deposition testimony in Japanese (A5887), that was translated live by interpreter, cannot change the ordinary meaning of "change a volume" (Apple-Resp. 72), particularly where the portion of the deposition that Apple cites is taken out of context. Immediately before the question that Apple quotes, Apple's

Case: 14-1060 Document: 42 Page: 34 Filed: 06/02/2014

### C. Unlike Apple's Construction, MobileMedia's Construction Is Internally Consistent With The Specification And The Claims

The district court's claim construction and summary judgment rulings requires that *stopping* playback of an alert sound be *outside* the scope of independent claim 12, but *within* the scope of its dependent claim 2. That just cannot be. It violates 35 U.S.C. § 112(d), which provides that the limitations of an independent claim must be within the scope of its dependent claims, and is inconsistent with fundamental principles of claim differentiation.

Apple supports its claim construction argument with a single, non-precedential case, *Zircon Corp. v. Stanley Black & Decker, Inc.*, 452 Fed. Appx. 966 (Fed. Cir. 2011). *Zircon* is easily distinguished. In *Zircon*, the accused products used a subtraction-based method for finding wall studs. *Id.* at 970. Every independent claim of the patent-

---

lawyer asked the witness about the differences between "stopping the sound" and "*reducing* the volume." The witness answered that the two things are different because, "completely shutting it off is not to reduce the volume in a linear manner. But rather, it is completely shutting it off." A5888(119:20-22). That distinction is not in dispute, as each alternative is reflected in two different embodiments and represented, respectively, by dependent claims 2 and 3. However, without any mention, the Apple lawyer then switched the claim term on the witness, substituting "change" for "reduce," and conflating the terms. A5888(119:3-120:9). Accordingly, Apple's quote is unreliable.

Case: 14-1060 Document: 42 Page: 35 Filed: 06/02/2014

in-suit claimed a ratio-based method for finding studs. *Id.* However, due to amendments made during prosecution, several dependent claims claimed both subtraction-based and ratio-based methods. *Id.* at 969. As a result of this peculiarity, the plaintiff argued on appeal that the court had erred in construing "ratio" to exclude the accused subtraction-based products. *Id.* at 971-72. The Federal Circuit addressed the inconsistency:

> It appears that claim 19 was meant to be an independent claim from which claims 21 and 22 would flow, allowing Zircon to capture a broad "comparing" methodology, which could employ alternate methods of calculating the comparisons. Because claim 19 must include all the steps of claim 10, however, the comparing methodology it claims must be in addition to the "computing a ratio" in claim 10.

*Id.* at 975-76. That is, the Federal Circuit held that the subtraction-based method of the dependent claim had to be in addition to the ratio-based method because the plain language of the independent claim explicitly excluded the dependent claims' limitations. Accordingly, *Zircon* stands for the proposition that if an independent claim claims "a light that is green" and a dependent claim adds the limitation that "wherein the light is red," an accused product would have to have a

Case: 14-1060 Document: 42 Page: 36 Filed: 06/02/2014

light that is green and then is red in order to infringe the dependent claim.

In contrast, claims 12 and 2 of the '231 Patent are not inconsistent. Claim 12 claims a broad "control means … to change a volume," and claims 2 and 3 simply limit claim 12 to "stop[ping] the sound" and "reduc[ing] the volume," respectively. Nothing in the specification or claim language dictates that "change a volume" and "stop the sound" are mutually exclusive. To the contrary, the plain and ordinary meaning of "change a volume of the generated alert sound" encompasses both the embodiment of the invention that "reduce[s] the volume of the sound," (claim 3) and the embodiment that "stop[s] the sound" (claim 2), as in both cases the "control means" causes the amount of the generated sound to be different.

Indeed, it is *Apple's* proposed interpretation that would render the claims nonsensical. Apple argues that its interpretation of claim 2 is consistent if that claim covers an embodiment where the device "slowly cut[s] off the sound – dialing down the audio level to alter the degree of loudness, as required by claim 12, and then stopping the generation of the sound, as required by claim 2." Apple-Resp. 75. But such an

Case: 14-1060 Document: 42 Page: 37 Filed: 06/02/2014

interpretation of claim 2 would exclude every preferred embodiment described in the specification, as those embodiments are directed to devices that either reduce the sound to a lower level, or stop the sound altogether. Indeed, there is not one embodiment disclosed in the specification that meets Apple's radical interpretation of claims 2 and 12. Of course, a claim interpretation that excludes a preferred embodiment is rarely the correct one. *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (citing *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583–84 (Fed. Cir. 1996)) ("A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'").

Moreover, Apple's interpretation of the claims as covering a device that "dial[ed] down the audio level to alter the degree of loudness, as required by claim 12, and then stopp[ed] the generation of the sound, as required by claim 2," is inconsistent with claim 3. Claim 3 depends from claim 12, and recites the communication terminal of claim 12, "wherein said control means controls the state of said alert sound generator to reduce the volume of the sound." Under Apple's theory, in

order to infringe Claim 3 a device would nonsensically have to "dial[] down the audio level to alter the degree of loudness, as required by claim 12," and *then* "reduce the volume of the sound," as required by claim 3.

While Apple's proposed claim interpretation stretches the scope of the claims in illogical ways, MobileMedia's interpretations are consistent. Independent claim 12 recites, "change a volume of the generated alert sound" and this broad term covers embodiments that "stop the sound" (dependent claim 2) and embodiments that "reduce the volume of the sound" (dependent claim 3).

Case: 14-1060 Document: 42 Page: 39 Filed: 06/02/2014

# CONCLUSION

For the foregoing reasons, this Court should reverse the grant of JMOL of non-infringement and invalidity with respect to claims 5, 6 and 10 of the ’075 Patent; and vacate the district court’s grant of summary judgment of non-infringement of the ’231 Patent.

Dated: June 2, 2014

Respectfully submitted,

/s/ *Steven M. Bauer*

Steven M. Bauer
Justin J. Daniels
Safraz W. Ishmael
John E. Roberts
John M. Kitchura, Jr.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Telephone: 617-526-9600
sbauer@proskauer.com
jdaniels@proskauer.com
sishmael@proskauer.com
jroberts@proskauer.com
jkitchura@proskauer.com

*Counsel for Appellee-Cross-Appellant MobileMedia Ideas LLC*

# CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff-Appellee MobileMedia Ideas LLC certifies:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(C). This brief contains 6,676 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Word 2010 in 14-point Century Schoolbook.

Dated: June 2, 2014

Respectfully submitted,

/s/ *Steven M. Bauer*

Steven M. Bauer

## CERTIFICATE OF SERVICE AND FILING

I certify that on June 2, 2014, I electronically filed the foregoing, REPLY BRIEF OF PLAINTIFF-APPELLEE, CROSS-APPELLANT, using the Court's CM/ECF filing system, thereby serving opposing counsel pursuant to Fed. Cir. Rule 25(a) and ECF-2(d) of the Court's May 17, 2012 Administrative Order Regarding Electronic Case Filing.

Dated: June 2, 2014

Respectfully submitted,

/s/ *Steven M. Bauer*
Steven M. Bauer